813 So.2d 31 (2002)
Linroy BOTTOSON, Appellant,
v.
STATE of Florida, Appellee.
Linroy Bottoson, Petitioner,
v.
Michael Moore, Secretary, Florida Department of Corrections, Respondent.
Nos. SC02-128, SC02-58.
Supreme Court of Florida.
January 31, 2002.
*32 Bill Jennings, Peter J. Cannon, Assistant CCRC, Eric Pinkard, Assistant CCRC, and Elizabeth A. Williams, Assistant CCRC, Office of the Capital Collateral Regional CounselMiddle Region, Tampa, FL; Mark E. Olive, Tallahassee, FL; and Timothy P. Schardl, Sacramento, CA, for Appellant/Petitioner.
Robert A. Butterworth, Attorney General, and Kenneth S. Nunnelley and Judy Taylor Rush, Assistant Attorneys General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
Linroy Bottoson, a prisoner under the sentence of death and an active death warrant, appeals an order of the trial court denying a successive motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. Bottoson also has filed in this Court a successive petition for writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(9), Fla. Const. These cases have been consolidated. We affirm the trial court's denial of postconviction relief, and we deny habeas relief.

BACKGROUND
The facts of this case are set forth in our initial opinion on direct appeal, wherein we affirmed Bottoson's first-degree murder conviction and death sentence. See Bottoson v. State, 443 So.2d 962, 963-64 (Fla. 1983), cert. denied, 469 U.S. 873, 105 S.Ct. 223, 83 L.Ed.2d 153 (1984). Bottoson filed his initial rule 3.850 motion for postconviction relief in 1985. Subsequently, a death warrant was issued while postconviction proceedings were still pending. The trial court entered an order granting an indefinite stay of execution, and Bottoson subsequently filed several amendments to his 3.850 motion. On November 14, 1991, the trial court held an evidentiary hearing and thereafter denied the motion. This Court affirmed the trial court's denial of postconviction relief, and denied rehearing on May 9, 1996. See Bottoson v. State, 674 So.2d 621 (Fla.1996), cert. denied, 519 U.S. 967, 117 S.Ct. 393, 136 L.Ed.2d 309 (1996). Bottoson also filed a petition for writ of habeas corpus, which this Court denied on January 9, 1997. See Bottoson v. Singletary, 685 So.2d 1302 (Fla.1997).
On June 2, 1998, Bottoson sought habeas corpus relief in the United States District Court for the Middle District of Florida, which was denied in an unpublished opinion, and the Eleventh Circuit affirmed the denial. See Bottoson v. Moore, 234 F.3d 526 (11th Cir.2000), cert. denied, ___ U.S. ___, 122 S.Ct. 357, 151 L.Ed.2d 270 (2001). The Eleventh Circuit denied Bottoson's motion for rehearing on February 28, 2001. See Bottoson v. Moore, 251 F.3d 165 (11th Cir.2001).

DEATH WARRANT PROCEEDINGS
On November 19, 2001, the Governor issued a second death warrant, and Bottoson's execution was set for February 5, 2002, at 6 p.m. On January 11, 2002, Bottoson filed a successive postconviction *33 motion, entitled a "Motion to Vacate Judgement and Sentence, and Request for Evidentiary Hearing and Stay of Execution." The trial court held a preliminary Huff[1] hearing on January 15, 2002. On the same day the trial court entered an order granting an evidentiary hearing only on the issue of Bottoson's claim that he should not be executed because he is mentally retarded. On January 17, the trial court held the evidentiary hearing and on January 18, the trial court entered an order denying all claims.

SUCCESSIVE 3.850 MOTION
On appeal, Bottoson first claims that he is mentally retarded and that his execution would violate the Eighth Amendment.[2] After hearing the testimony of three mental health experts who evaluated Bottoson's mental condition, the trial court found that Bottoson was not mentally retarded.
We do not reach the merits of whether Bottoson's execution would violate the Eighth Amendment or whether section 921.137, Florida Statutes (2001), dealing with the execution of the mentally retarded is unconstitutional as applied, because we conclude that the trial court's finding of no mental retardation is supported by the record and evidence presented at the evidentiary hearing. See Watts v. State, 593 So.2d 198, 204 (Fla.1992) (stating that even if the defendant's premise was correct that it was cruel and unusual to execute mentally retarded persons, he would not be entitled to its benefits because two out of three mental health experts found that he was not mentally retarded and the defense psychologist found him to be only mildly retarded); Carter v. State, 576 So.2d 1291, 1294 (Fla.1989) (stating that the evidence that the defendant was mentally retarded was "so minimal as to render the Penry issue irrelevant").
The trial court determined that there was essentially a three-part test for determining mental retardation and that Bottoson failed to prove retardation under that test. While the trial court found that Bottoson did not meet the first prong of the test for evaluating mental retardation based on the fact that his IQ tests consistently indicated that he was not mentally retarded, the court also evaluated the evidence as to whether Bottoson had significant deficiencies in adaptive behavior, another requirement for a finding of retardation. In the order denying relief, the trial court discussed Dr. Greg Pritchard's use of the Vineland test to evaluate adaptive behavior and noted that the test took into account the fact that Bottoson was institutionalized. Dr. Pritchard concluded that Bottoson did not have significant deficiencies in adaptive behavior. The court stated: "The court finds Dr. Pritchard's testimony credible and accepts this explanation."[3] Hence, *34 the trial court found that Bottoson was not mentally retarded because the evidence demonstrated that he failed to meet two out of the three requirements of the test for evaluating mental retardation. Since the evidence supports the trial court's findings we find no error and affirm this determination.
Bottoson's second, third, and fourth claims are intertwined and all relate to the trial court's denial of Bottoson's request for a transport order that would have enabled him to receive a Single Photon Emission Computed Tomography Scan (SPECT scan) or a Positron Emission Tomography Scan (PET-scan). Bottoson sought leave from the trial court to obtain a SPECT/PET-scan based on the affidavits of two psychologists who stated that they would need a brain scan to determine if Bottoson had brain damage.[4] After holding a hearing on the motion, the trial court entered an order denying the motion for a transport order. In its holding, the court relied upon this Court's decision in Davis v. State, 742 So.2d 233 (Fla.1999), wherein this Court approved a trial court's denial of similar testing. See id. at 237 (affirming the trial court's ruling that the defendant's request for a PET-scan (1) was procedurally barred because it could have been raised in an earlier postconviction motion; (2) was speculative because it was unsupported; and (3) was meritless because there was no reasonable probability that the outcome of the trial would have been different).
We have previously stated: "A trial court's decision to deny a defendant's motion for a PET-Scan will not be disturbed absent an abuse of discretion." Rogers v. State, 783 So.2d 980, 998-99 (Fla.2001) (holding that when considering whether the trial court abused its discretion, this Court should consider the following two factors: (1) if the defendant established a particularized need for the test; and (2) if the defendant was prejudiced by the trial court's denial of the motion requesting a PET-scan). In this case, we conclude that the trial court did not abuse its discretion when it denied Bottoson leave to obtain a SPECT/PET scan because it appears that Bottoson's claim that he has brain damage not only is speculative, but he has also failed to relate the need for this testing to any substantive claim he has made in his motion for postconviction relief. In other words, Bottoson has not presented sufficient particularized need for the test, he merely wants it to establish if he has brain damage. See Robinson v. State, 761 So.2d 269, 275-76 (Fla.1999) (affirming the trial court's denial of a SPECT scan because the defendant failed to establish any need for the test and neither expert testified that the exam was necessary to complete their medical opinion, only that it would be *35 helpful). Thus, we affirm the trial court's denial of leave to obtain a SPECT/PET scan.
In Bottoson's fifth claim, he asserts that this Court and the Eleventh Circuit have previously misconstrued the testimony of Dr. Robert Graham Kirkland, the defense psychologist who testified at Bottoson's first 3.850 hearing. Bottoson now argues that Dr. Kirkland's affidavit, dated January 11, 2002, is "newly discovered evidence" which the trial court should have considered. The trial court denied this claim and explained:
Mr. Bottoson claims that the Supreme Court of Florida and the Eleventh Circuit Court of Appeals, in their respective opinions on his case, materially misinterpreted the evidentiary hearing testimony of Dr. Robert Kirkland. He provides an affidavit from Dr. Kirkland, signed January 10, 2002, in which he disagrees with certain inferences drawn by those courts.
However, it is not necessary to reach the merits of Mr. Bottoson's contentions, since this claim is procedurally barred. Mr. Bottoson could have filed a timely motion for rehearing in either of those courts alleging an error interpreting Dr. Kirkland's testimony. He did not. This Court does not review for error the decisions of either the Supreme Court of Florida or the Eleventh Circuit Court of Appeals. Accordingly, this claim is denied.
In fact, this Court has previously considered Bottoson's claim that the Court misconstrued Dr. Kirkland's testimony. After the Court's 1996 opinion was released, Bottoson filed a motion for rehearing on February 16, 1996, in which he argued that the Court's opinion discussing Dr. Kirkland's testimony misconstrued that testimony and that the Court had misapprehended the facts. The Court denied rehearing on May 9, 1996. See Bottoson, 674 So.2d at 621. Dr. Kirkland's affidavit simply rehashes his 1991 evidentiary hearing testimony, and Bottoson's assertions here include the same allegations this Court considered and rejected when it denied rehearing. Thus, we affirm the trial court's finding that this claim is procedurally barred.

HABEAS CORPUS
The first allegation Bottoson makes in his habeas petition is that this Court failed to properly conduct a de novo review when it reviewed his first postconviction motion because we stated the "evidence presented below was conflicting. However, there was competent, substantial evidence to support the judge's findings and conclusions." See Bottoson v. State, 674 So.2d 621, 625 (Fla.1996). This Court has consistently held that habeas claims wherein the defendant challenges this Court's previous standard of review in the case are procedurally barred. See Thompson v. State, 759 So.2d 650, 657 n. 6 (Fla. 2000) (stating that the defendant's claim that this Court conducted an improper harmless error analysis during direct appeal was an improper "invitation to utilize the writ of habeas as a vehicle for the reargument of issues which have been raised and ruled on by this Court"); Parker v. Dugger, 550 So.2d 459, 460 (Fla. 1989) (stating that the defendant's claim that this Court failed to provide him with a meaningful review of his death sentence on direct appeal was procedurally barred). As we held in Parker, "habeas corpus petitions are not to be used for additional appeals on questions which could have been, should have been, or were raised on appeal or in a rule 3.850 motion, or on matters that were not objected to at trial." Parker, 550 So.2d at 460. Thus, we find that this claim is procedurally barred because Bottoson is improperly attempting *36 to obtain a second appeal of issues that were raised or should have been raised in his prior 3.850 motion and appeal.
Bottoson's second habeas claim is related to his first claim, asserting that if this Court had properly and independently reviewed his claims, it would have considered the cumulative effect of all the available mitigating evidence and found his claim valid. For the same reasons that we articulated above, we find this claim procedurally barred.
In Bottoson's third and final habeas claim, he alleges that the U.S. Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), applies to Florida's capital sentencing statute. We have consistently rejected similar claims and have decided this issue adversely to Bottoson's position. See King v. State, 808 So.2d 1237 (Fla.2002), stay granted, ___ U.S. ___, 122 S.Ct. 932, 151 L.Ed.2d 894 (2002); Mills v. Moore, 786 So.2d 532, 536-537 (Fla.2001), cert. denied, 532 U.S. 1015, 121 S.Ct. 1752, 149 L.Ed.2d 673 (2001); see also Brown v. Moore, 800 So.2d 223 (Fla. 2001) (rejecting claims that aggravating circumstances are required to be charged in indictment, submitted to jury during guilt phase, and found by unanimous jury verdict); Mann v. Moore, 794 So.2d 595, 599 (Fla.2001). Thus, we conclude that Bottoson is not entitled to relief on this claim.
Although we recognize that the United States Supreme Court recently granted certiorari review in State v. Ring, 200 Ariz. 267, 25 P.3d 1139 (2001), cert. granted, ___ U.S. ___, 122 S.Ct. 865, 151 L.Ed.2d 738 (2002), we decline to grant a stay of execution or other relief, in accordance with our precedent on this issue in King.
Accordingly, based on the foregoing, we affirm the trial court's denial of 3.850 relief and deny habeas corpus relief.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS, and QUINCE, JJ., concur.
NOTES
[1] Huff v. State, 622 So.2d 982 (Fla.1993).
[2] Bottoson points out that the U.S. Supreme Court has granted certiorari in Atkins v. Virginia, 533 U.S. 976, 122 S.Ct. 24, 150 L.Ed.2d 805 (2001), to decide whether the execution of mentally retarded individuals convicted of capital crimes violates the Eighth Amendment. In Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), the Court rejected a similar claim.
[3] The trial court also pointed out that Dr. Henry Dee was the only expert to opine that Bottoson was mentally retarded. The court found Dr. Dee's testimony not credible because Dr. Dee's opinion was "unacceptably vague in light of the objective evidence." We give deference to the trial court's credibility evaluation of Dr. Pritchard's and Dr. Dee's opinions. See Porter v. State, 788 So.2d 917, 923 (Fla.2001) (giving deference to the trial court's acceptance of one mental health expert's opinion over another expert's opinion and stating "[w]e recognize and honor the trial court's superior vantage point in assessing the credibility of witnesses and in making findings of fact"). See also Stephens v. State, 748 So.2d 1028, 1034-35 (Fla.1999).
[4] In his affidavit, Dr. Bill E. Mosman recommended that Bottoson receive a SPECT/PET scan, stating:

It is not clinically possible within a reasonable degree of clinical certainty for me to render a precise and definitive opinion regarding brain damage or to differentiate between several competing diagnostic and functional possibilities which would be associated with specific types of brain injury impairments versus non-injury impairments unless neuro imaging studies are done.
In his affidavit, Dr. Dee stated that his examination of Bottoson revealed symptoms of cerebral disease. Dr. Dee recommended that Bottoson receive a SPECT/PET scan stating:
[T]here is a history of two cerebral traumas, a long history of inadequate intellectual and social functioning, as well as emotional disturbance, that by now seem quite well documented.... [O]nly further exploration can settle this and therefore give a true and accurate understanding of his mental state at the time of the crime.