824 So.2d 115 (2002)
Linroy BOTTOSON
v.
Michael MOORE.
No. SC02-1455.
Supreme Court of Florida.
July 8, 2002.

ORDER GRANTING STAY OF EXECUTION AND SETTING ORAL ARGUMENT
The Court, to afford an opportunity for appropriate consideration of the multiple issues in this matter generated by recent decisions of the Supreme Court of the United States, grants a temporary stay of execution until further order of this Court.
The Court will hear oral argument at 9:00 a.m., Wednesday, August 21, 2002. A maximum of twenty minutes to the side is allowed.
Petitioner's brief on the merits shall be filed on or before Thursday, July 18, 2002; respondent's brief on the merits shall be filed on or before Monday, July 29, 2002; and petitioner's reply brief on the merits shall be filed on or before Monday, August *116 5, 2002. Please file an original and seven copies of all briefs.
Per this Court's Administrative Order In Re: Mandatory Submission of Briefs on Computer Diskette dated February 5, 1999, counsel are directed to include a copy of all briefs on a DOS formatted 1-½ inch diskette in Word Perfect 5.1 (or higher) format. PLEASE LABEL ENVELOPE TO AVOID ERASURE.
ANSTEAD, C.J., and SHAW, HARDING, PARIENTE, LEWIS and QUINCE, JJ., concur.
HARDING, J., concurs with an opinion, in which QUINCE, J., concurs.
PARIENTE, J., concurs with an opinion.
WELLS, J., dissents with an opinion.
HARDING, J., concurring.
I find Justice Wells' dissenting opinion to be very persuasive as to why this Court should decline to stay this execution or consider the impact of Ring v. Arizona, ___ U.S. ___, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). In my view, the court that issued the Ring decision is in the best position to interpret its impact on Florida's capital sentencing scheme. The fact that the Supreme Court denied certiorari in this case on this precise issue nearly four days after it issued its opinion in Ring seemingly sends a clear message that Ring is not applicable to this case.
Nevertheless, because it did not specifically state to the contrary, I cannot dismiss the possibility that the Supreme Court intended for this Court to consider the impact of Ring in Florida. Given the gravity of the issue and the potential impact on our state's judicial system, I think this Court must proceed with caution. Therefore I concur with the majority's decision to temporarily stay the execution. Pursuant to this Court's briefing schedule, the parties will be given adequate time to present the issues and this Court will be afforded adequate time to reach a conclusion.
QUINCE, J., concurs.
PARIENTE, J., concurring.
I write separately to explain why I concur in the majority's decision to stay the execution in this case.[1] In my view, it is incumbent upon this Court to evaluate the effect on Florida's capital sentencing scheme of the landmark case of Ring v. Arizona,___ U.S. ___, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), decided by the United States Supreme Court on June 24, 2002. Ring has raised questions concerning the Supreme Court's longstanding precedent in death penalty cases. Indeed, under the United Supreme Court Rules, the Ring decision is not yet final.[2] Moreover, precisely *117 because the United States Supreme Court did not explicitly approve Florida's sentencing scheme in Ring or in any other case after Ring was decided, the Ring decision creates uncertainty as to its effect more so because we now know that a majority of the United States Supreme Court is seriously concerned about the implications for the Sixth Amendment trial by jury when a judge and not a jury makes the factual determinations that are prerequisites for an increased penalty.[3] In the context of a capital case, the stakes are the ultimate because the increased penalty is death.
In particular, Justice Scalia, joined by Justice Thomas, expressed his concern that the Sixth Amendment has been undermined by the growing practice of allowing judges to increase punishment beyond what is authorized by a jury, which has caused him
to believe that our people's traditional belief in the right of trial by jury is in perilous decline. That decline is bound to be confirmed, and indeed accelerated, by the repeated spectacle of a man's going to his death because a judge found that an aggravating factor existed. We cannot preserve our veneration for the protection of the jury in criminal cases if we render ourselves callous to the need for that protection by regularly imposing the death penalty without it.
Ring, at 2445 (Scalia, J., concurring). While I would not want to unnecessarily delay an execution that is constitutionally permissible, in good conscience I cannot agree to allow a person to be put to death before the parties are given the opportunity to brief the issues, before this Court has the opportunity for oral argument to fully explore the issues, and before this Court is given the opportunity to deliberately and reflectively analyze the serious constitutional questions raised by Ring and to issue an opinion. Simply put, only seven days have passed between the date that the new execution date was set and Bottoson's scheduled execution.[4] This short time frame[5] does not provide sufficient time for meaningful review by this Court of Ring's application to Florida's death penalty scheme. The existence of pending death warrants should not compel us to consider and decide these significant issues whose effects for the administration of justice are both complex and far-reaching in just a few days.
It is important to note that in rejecting recent challenges to Florida's death penalty scheme, this Court relied on the fact that "[n]o court has extended Apprendi to capital sentencing schemes, and the plain language of Apprendi indicates that the case is not intended to apply to capital schemes." Mills v. Moore, 786 So.2d 532, 537 (Fla.2001). Indeed, we unanimously rejected Bottoson's claim that Apprendi applied to Florida's death penalty statute. *118 See Bottoson v. State, 813 So.2d 31, 36 (Fla.2002). However, in the United States Supreme Court's opinion in Ring, the Court clearly and unequivocally held that Apprendi did apply to capital cases, thus proving our opinion in Mills wrong. In other words, we were mistaken as a matter of law in our previous opinion in Bottoson in holding that Apprendi did not apply to capital proceedings. In Ring, the United States Supreme Court specifically held:
The right to trial by jury guaranteed by the Sixth Amendment would be senselessly diminished if it encompassed the factfinding necessary to increase a defendant's sentence by two years but not the factfinding necessary to put him death. We hold that the Sixth Amendment applies to both.
Ring, at 2443.
In Mills, we rejected the argument that because the maximum penalty is death, a jury finding was not necessary. 786 So.2d at 537. Based upon the U.S. Supreme Court's statements in Ring, we now know that we were wrong. The Supreme Court rejected the argument that the death penalty was merely a "maximum penalty" under a sentencing scheme, stating that the relative question is "one not of form, but of effect" and that if the State makes a punishment dependent on a finding of fact, then that fact "must be found by a jury beyond a reasonable doubt." Ring, at 2439. Therefore, based on Ring, it is the jury and not the judge that must find the aggravating factors necessary for the imposition of the death penalty because the aggravating factors operate as "the functional equivalent of an element of a greater offense." Ring, at 2443.
I understand that the United States Supreme Court has terminated the stay in Bottoson's case and denied the petition for certiorari. However, I cannot accept the dissent's view that "[t]he termination of the stays of execution by the Supreme Court can only mean that Ring does not apply to the Florida capital sentencing statute." Dissenting op. at 124. That is what we thought after Apprendi when in case after case, the United States Supreme Court denied petitions for certiorari in cases that had stated that Apprendi did not apply to capital sentencing. See Mills, 786 So.2d at 537 ("The Supreme Court's denial of certiorari indicates that the Court meant what it said when it held that Apprendi was not intended to affect capital sentencing schemes."). Clearly, we were wrong in Mills that the multiple instances where the United States Supreme Court denied certiorari after Apprendi meant that the Supreme Court did not intend Apprendi to apply to capital sentencing.
As this Court has recognized, "[t]he denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times." State v. White, 470 So.2d 1377, 1379 (Fla.1985) (quoting United States v. Carver, 260 U.S. 482, 490, 43 S.Ct. 181, 67 L.Ed. 361 (1923)). Indeed, the United States Supreme Court has stated in a long line of pronouncements:
What is the significance of this Court's denial of certiorari? That question is asked again and again.... Almost 30 years ago Mr. Justice Frankfurter provided us with an answer to that question that should be read again and again.
"This Court now declines to review the decision of the Maryland Court of Appeals. The sole significance of such denial of a petition for writ of certiorari need not be elucidated to those versed in the Court's procedures. It simply means that fewer than four members of the Court deemed it desirable to review a decision of the lower court as a matter `of *119 sound judicial discretion.' Rule 38, paragraph 5. A variety of considerations underlie denials of the writ, and as to the same petition different reasons may lead different Justices to the same result. This is especially true of petitions for review on writ of certiorari to a State court.... Pertinent considerations of judicial policy here come into play. A case may raise an important question but the record may be cloudy. It may be desirable to have different aspects of an issue further illumined by the lower courts. Wise adjudication has its own time for ripening....
"Inasmuch, therefore, as all that a denial of a petition for a writ of certiorari means is that fewer than four members of the Court thought it should be granted, this Court has rigorously insisted that such a denial carries with it no implication whatever regarding the Court's views on the merits of a case which it has declined to review. The Court has said this again and again; again and again the admonition has to be repeated." Opinion respecting the denial of the petition for writ of certiorari in Maryland v. Baltimore Radio Show, 338 U.S. 912, 917-919, 70 S.Ct. 252, 94 L.Ed. 562.
Singleton v. Commissioner of Internal Revenue, 439 U.S. 940, 942-44, 99 S.Ct. 335, 58 L.Ed.2d 335 (1978) (opinion of Stevens, J., respecting the denial of the petition for writ of certiorari).[6]
I recognize, of course, that the United States Supreme Court has specifically directed lower courts to "leav[e] to this Court the prerogative of overruling its own decisions." Agostini v. Felton, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (quoting Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)). However, in my view, the United States Supreme Court should have the benefit of this Court's analysis of how the holding in Ring applies to Florida's death penalty scheme.
In fact, it was not until the Supreme Court of Arizona in State v. Ring, 200 Ariz. 267, 25 P.3d 1139 (2001), respectfully explained why the Apprendi majority's explanation of Arizona's sentencing scheme was incorrect that the United States Supreme Court decided to take Ring and to use that case as a vehicle to expressly overrule Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). Until now our jurisprudence has only ever discussed Apprendiit has never discussed Ring. Thus, it is this Court's responsibility to explain Florida's sentencing scheme through the lens of Ring and not through the lens of Apprendi. As the United States Supreme Court stated in Ring, a state court's "construction of the State's own law is authoritative...." Ring, at 2440 (citing Mullaney v. Wilbur, 421 *120 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)).
In his petition for writ of habeas corpus and application for stay of execution, Bottoson raises several concerns regarding the constitutionality of Florida's death penalty statute in light of Ring. Although I ultimately may disagree with Bottoson as to the merits of these claims, I do agree with him that they warrant further study than is available at this time. Specifically, as stated above, Ring requires that the facts essential to the imposition of the level of the punishment that the defendant receives be found by a jury beyond a reasonable doubt.
Florida's death penalty statute has been referred to as a "hybrid system." Ring, at 2442 n. 6. In practical terms this means that in Florida, after the defendant is found guilty of first-degree murder beyond a reasonable doubt by a unanimous twelve-person jury, a penalty phase proceeding is conducted where both the jury and judge have distinct roles. The Florida statute requires the jury to render an "advisory sentence" based on a balancing of aggravating factors and mitigating factors. The jury, however, is not required to specify what, if any, aggravators it found. Once the jury has rendered its recommendation, the trial judge, "notwithstanding the recommendation of a majority of the jury," shall set forth in writing specific aggravators and mitigators, balance the aggravators and mitigators, and render a sentence. Fla. Stat. § 921.141. As the United States Supreme Court recognized in Walton v. Arizona, in concluding that Arizona's sentencing scheme was not dissimilar to Florida's scheme:
The distinctions Walton attempts to draw between the Florida and Arizona statutory schemes are not persuasive. It is true that in Florida the jury recommends a sentence, but it does not make factual findings with regard to the existence of mitigating and aggravating circumstances and its recommendation is not binding on the trial judge.

Walton, 497 U.S. at 648, 110 S.Ct. 3047 (emphasis supplied).
Ring requires that the jury, as the finder of fact, find the aggravators beyond a reasonable doubt. See Ring, at 2439. In the context of a capital case, the Supreme Court in Ring has definitively pronounced for the first time that the statutory aggravators function as the equivalent of elements of a greater offense because without the finding of at least one aggravator the defendant is not eligible for the death penalty. See Ring, at 2442. Thus, a substantial question is raised as to whether Florida's capital scheme violates the holding in Ring, that the Sixth Amendment requires that "enumerated aggravating factors ... be found by a jury." Ring, at 2443.
Similarly, because Florida law does not require that any number of jurors agree that the State has proven the existence of an aggravator before that aggravator may be deemed to be found, it is questionable whether the jury has actually found proof beyond a reasonable doubt of a particular aggravator. Another potential question raised by Bottoson regarding precedent from this Court now called into doubt by Ring is this Court's holding that "it is not error for a judge to consider and find an aggravator that was not presented to or found by the jury." Davis v. State, 703 So.2d 1055, 1061 (Fla.1998).
In fact, a survey of our past jurisprudence will reveal that, when we review the propriety of the death sentence, we have relied primarily on the trial court's factual findings of aggravators and mitigators. Indeed, we have characterized that "the sentencing order is `a statutorily required personal evaluation by the trial judge of aggravating and mitigating factors' that *121 forms the basis for a sentence of life or death." Morton v. State, 789 So.2d 324, 332 (Fla.2001) (quoting Patton v. State, 784 So.2d 380, 388 (Fla.2000)).
Further, Florida's capital statutory scheme requires only that the advisory jury recommend death by a bare majority; whereas the unanimous finding of guilt is required. Whether or not the requirement of unanimity (or at least more than a bare majority of the jury) is part of the defendant's constitutional right, it appears to me that it could be argued that the factfinding of the essential element necessary to subject the defendant to the ultimate punishment should be afforded no less constitutional dignity than the jury's finding of guilt.[7]
Moreover, Ring casts serious doubt on the constitutionality of our scheme to the extent that it permits a judge to override a jury recommendation of a life sentence.[8] When a jury recommends a life sentence, the trial court and this Court have no way of knowing whether or not the jury has found the existence of any aggravators or has found that the mitigating circumstances outweigh the aggravators. Although a life recommendation was not involved in this case, we need to determine if that aspect of the statute can be addressed without rendering the entire scheme unconstitutional.
The question also arises as to whether any or all of these problems could be solved by requiring the use of a special verdict where the jury would be required to make "findings" of the existence of the aggravating circumstances before making its ultimate "recommendation" as to whether the death penalty should be imposed. However, even if those findings are in place, we must still confront the fact that under Florida's sentencing scheme the jury is told that its role is advisory only, and the issue of whether in light of Ring the fact that the jury is instructed as to its unique role in sentencing, which is markedly different than its binding factfinding role in the guilt phase, creates a constitutional infirmity.[9]
In short, what is of concern about Florida's death penalty scheme in light of Ring is that our statute appears to reverse the traditional roles of the judge and the jury in sentencing. In Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the Supreme Court in a plurality opinion held judicial sentencing in a capital *122 case constitutional.[10] The majority of the Supreme Court still adheres to the proposition that it is constitutionally permissible for the judge to make the ultimate determination of whether the death sentence should be imposed provided that the jury makes the predicate factual determinations. However, under Florida's sentencing scheme the jury's role is to advise the judge on the sentence, and it can make a recommendation of death based on a bare majority. The jury does not find specific aggravating factors. Thus, it is the jury that recommends a sentence and the judge who finds the specific aggravators.[11]
Accordingly, before another person is executed in this Statethe only responsible decision that this Court can makeand in fact the very least thing that this Court can dois to re-evaluate this Court's prior opinions on this issue in light of Ring. This case is especially disconcerting given the irreparable harm that may ensue should it be determined that Ring does have implications for Florida law. Indeed, the potential harm in granting the stay now and later finding out that Ring is inapplicable to Florida's death penalty scheme is minimal compared to the far greater harm (indeed truly irreparable harm) in denying the stay, allowing Bottoson to be executed and later finding out that Ring does apply. The dissent's view on the merits of the opinion may ultimately prove to be correct, but we should not make such a critical decision in such a short time. Accordingly, in my view we have no option at the present time but to grant the stay, request briefing and hold oral argument on an expedited basis.
WELLS, J., dissenting.
I find no legal basis to stay the execution in this case. We have finally adjudicated this case. No United States constitutional law applicable to the Florida capital sentencing statute has been held by the Supreme Court of the United States to have changed. To the contrary, the Supreme Court has removed any obstacle for this execution to occur. We are bound by their application of federal constitutional law. Bottoson's alternative claim that he is mentally retarded has previously been addressed and decided contrary to his position.
When Bottoson's second execution warrant was signed, the Governor set Bottoson's execution for February 5, 2002. Prior to that date, Bottoson engaged in successive postconviction proceedings, to which this Court rendered a final adjudication. See Bottoson v. State, 813 So.2d 31 (Fla.2002), cert. denied, ___ U.S. ___, 122 S.Ct. 2670, 153 L.Ed.2d 844 (2002). The Supreme Court stayed Bottoson's execution in Bottoson v. Florida, 534 U.S. 1121, 122 S.Ct. 981, 151 L.Ed.2d 962 (2002), a few hours before he was scheduled for execution. However, in the Supreme Court's order staying the execution *123 in this case and in Amos Lee King's case,[12] the Supreme Court provided:
Should the petition for writ of certiorari be denied, this stay shall terminate automatically. In the event the petition for writ of certiorari is granted, the stay shall terminate upon the issuance of the mandate of this Court.
Id.; see also King v. Florida, 534 U.S. 1118, 122 S.Ct. 932, 151 L.Ed.2d 894 (2002).
On June 28, 2002, the Supreme Court of the United States denied certiorari in both cases as well as in four other Florida cases which had raised the identical Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), claim.[13] These denials of certiorari occurred just four days after the Supreme Court announced its decision in Ring v. Arizona, ___ U.S. ___, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). Therefore, the conclusion inescapably follows that there has been no change in federal constitutional law applicable to Florida's capital sentencing statute since the time the Supreme Court entered in Bottoson's case the order for stay of execution, which has now terminated.
The assertion is now made that a stay of execution should be entered by this Court for a period of time sufficient to consider the effect of the Supreme Court's decision in Ring. However, the application of Ring was plainly before the Supreme Court in its review of this Court's decisions in King and Bottoson at the time the Supreme Court stayed these executions. In King, we specifically stated:
King's sixth contention, that Apprendi applies to Florida's capital sentencing statute and the maximum sentence under the statute is death, has been decided adversely to King's position. See Mills v. Moore, 786 So.2d 532, 537-38 (Fla.2001), cert. denied, 532 U.S. 1015, 121 S.Ct. 1752, 149 L.Ed.2d 673 (2001); see also Brown v. Moore, 800 So.2d 223 (Fla.2001) (rejecting claims that aggravating circumstances are required to be charged in indictment, submitted to jury during guilt phase, and found by unanimous jury verdict); Mann v. Moore, 794 So.2d 595, 599 (Fla.2001) (same). We are aware that the United States Supreme Court very recently granted certiorari in State v. Ring, 200 Ariz. 267, 25 P.3d 1139 (2001), cert. granted, ___ U.S. ___, 122 S.Ct. 865, 151 L.Ed.2d 738 (2002); however, we decline to grant a stay of execution following our precedent on this issue, on which the Supreme Court has denied certiorari. *124 Thus, King is not entitled to relief on this issue.
King, 808 So.2d at 1245-46. In Bottoson, we stated:
In Bottoson's third and final habeas claim, he alleges that the U.S. Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), applies to Florida's capital sentencing statute. We have consistently rejected similar claims and have decided this issue adversely to Bottoson's position. See King v. State, 808 So.2d 1237 (Fla.2002), stay granted, 534 U.S. 1118, 122 S.Ct. 932, 151 L.Ed.2d 894 (2002); Mills v. Moore, 786 So.2d 532, 536-537 (Fla.2001), cert. denied, 532 U.S. 1015, 121 S.Ct. 1752, 149 L.Ed.2d 673 (2001); see also Brown v. Moore, 800 So.2d 223 (Fla.2001) (rejecting claims that aggravating circumstances are required to be charged in indictment, submitted to jury during guilt phase, and found by unanimous jury verdict); Mann v. Moore, 794 So.2d 595, 599 (Fla.2001). Thus, we conclude that Bottoson is not entitled to relief on this claim.
Bottoson, 813 So.2d at 36. The termination of the stays of execution by the Supreme Court can only mean that Ring does not apply to the Florida capital sentencing statute.
Moreover, I note that the Supreme Court has repeatedly upheld Florida's capital sentencing statute against federal constitutional attacks, such attacks having been brought pursuant to several provisions of the United States Constitution. The Supreme Court in Ring did overrule Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." Ring, at 2443. The Ring decision is based on the Arizona capital sentencing statute. Importantly, though, the Supreme Court in Ring also cited to its decision in Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989). See Ring, at 2437. In Hildwin, the Supreme Court rejected a Sixth Amendment attack to Florida's capital sentencing statute and explained:
Thus we concluded that the requirement that the findings be made by a judge rather than the jury did not violate the Sixth Amendment because "there is no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact." [McMillan v. Pennsylvania, 477 U.S. 79, 93, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)]. Like the visible possession of a firearm in McMillan, the existence of an aggravating factor here is not an element of the offense but instead is "a sentencing factor that comes into play only after the defendant has been found guilty." Id. at 86, 106 S.Ct. 2411. Accordingly, the Sixth Amendment does not require that the specific findings authorizing the imposition of the sentence of death be made by the jury.
Hildwin, 490 U.S. at 640-41, 109 S.Ct. 2055. The Supreme Court in Ring overruled neither Hildwin nor multiple decisions in which the Supreme Court rejected the very same constitutional challenges to Florida's capital sentencing statute made now by Bottoson.
In 1995 in deciding Harris v. Alabama, 513 U.S. 504, 509-10, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995), the Supreme Court wrote favorably concerning the Florida capital sentencing statute:
We have held Florida's capital sentencing statute to be constitutional. See Proffitt v. Florida, [428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976)]; Spaziano v. Florida, [468 U.S. 447, 104 S.Ct. *125 3154, 82 L.Ed.2d 340 (1984)]. In Spaziano, we addressed the specific question whether Florida could, consistent with the Constitution, vest sentencing authority in the judge and relegate the jury to an advisory role. While acknowledging that sentencing power resides with the jury in most States, we made clear that the "Eighth Amendment is not violated every time a State reaches a conclusion different from a majority of its sisters over how best to administer its criminal laws." Id. at 464, 104 S.Ct. 3154. We therefore rejected the contention that "placing the responsibility on a trial judge to impose the sentence in a capital case is so fundamentally at odds with contemporary standards of fairness and decency that Florida must be required to alter its scheme and give final authority to the jury to make the life-or-death decision. Id. at 465, 104 S.Ct. 3154; see also Walton v. Arizona, 497 U.S. 639, 648, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990); Clemons v. Mississippi, 494 U.S. 738, 745, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990).
. . . .
In various opinions on the Florida statute we have spoken favorably of the deference that a judge must accord the jury verdict under Florida law. While rejecting an ex post facto challenge in Dobbert v. Florida, 432 U.S. 282, 294, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), we noted the "crucial protection" provided by the standard of Tedder v. State[, 322 So.2d 908], supra at 910 [Fla.1975].
Furthermore, there has been no receding from or rejection by the Supreme Court of its decisions in Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984) (rejecting Fifth, Sixth, Eighth, and Fourteenth Amendment challenges); Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) (plurality opinion) (noting that Proffitt upheld constitutionality of Florida's system); Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) (discussing that Proffitt upheld constitutionality of Florida's system and finding no ex post facto violation); Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (plurality opinion) (discussing that Proffitt upheld constitutionality of Florida's system); or Proffitt v. Florida, 428 U.S. 242, 251-60, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (plurality opinion). Indeed, on the same day the Supreme Court released Ring, it released Harris v. United States, No. 00-10666 (U.S. June 24, 2002), which reaffirmed the viability of McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), which was relied on by the Supreme Court in its Hildwin decision. This is likewise consistent with what the Supreme Court explained in its 1999 decision in Jones v. United States, 526 U.S. 227, 250-51, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999):

[Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984),] was followed in a few years by Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (per curiam), holding that the determination of death-qualifying aggravating facts could be entrusted to a judge, following a verdict of guilty of murder and a jury recommendation of death, without violating the Sixth Amendment's jury clause. Although citing Spaziano as authority, 490 U.S. at 639-640, 109 S.Ct. 2055, Hildwin was the first case to deal expressly with factfinding necessary to authorize imposition of the more severe of alternative sentences, and thus arguably comparable to factfinding necessary to expand the sentencing range available on conviction of a lesser crime than murder. Even if we were satisfied that the analogy was sound, Hildwin could not drive *126 the answer to the Sixth Amendment question raised by the Government's position here. In Hildwin, a jury made a sentencing recommendation of death, thus necessarily engaging in the factfinding required for imposition of a higher sentence, that is, the determination that at least one aggravating factor had been proved. Hildwin, therefore, can hardly be read as resolving the issue discussed here, as the reasoning in Walton v. Arizona, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), confirms.
There is simply no reason for this Court to stay this execution in order to study or further consider Ring. These cases of the Supreme Court of the United States, dealing directly with the Florida capital sentencing statute[14]not Ring, which deals with the Arizona capital sentencing statute-continue to be what this Court and lower Florida courts are to follow.
Bottoson also argues that he is mentally retarded and that in light of Atkins v. Virginia, ___ U.S. ___, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), and Ring, his mental condition should be reevaluated under "adequate procedures." Bottoson v. Moore, SC02-1455, petition at 42. In this Court's previous opinion affirming the trial court's conclusion that Bottoson is not mentally retarded, this Court observed:
We do not reach the merits of whether Bottoson's execution would violate the Eighth Amendment or whether section 921.137, Florida Statutes (2001), dealing with the execution of the mentally retarded is unconstitutional as applied, because we conclude that the trial court's finding of no mental retardation is supported by the record and evidence presented at the evidentiary hearing. See Watts v. State, 593 So.2d 198, 204 (Fla. 1992) (stating that even if the defendant's premise was correct that it was cruel and unusual to execute mentally retarded persons, he would not be entitled to its benefits because two out of three mental health experts found that he was not mentally retarded and the defense psychologist found him to be only mildly retarded); Carter v. State, 576 So.2d 1291, 1294 (Fla.1989) (stating that the evidence that the defendant was mentally retarded was "so minimal as to render the [Penry v. Lynaugh, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989),] issue irrelevant").
The trial court determined that there was essentially a three-part test for determining mental retardation and that Bottoson failed to prove retardation under that test. While the trial court found that Bottoson did not meet the first prong of the test for evaluating mental retardation based on the fact that his IQ tests consistently indicated that he was not mentally retarded, the court also evaluated the evidence as to whether Bottoson had significant deficiencies in adaptive behavior, another requirement for a finding of retardation. In the order denying relief, the trial court discussed Dr. Greg Pritchard's use of the Vineland test to evaluate adaptive behavior and noted that the test took into account the fact that Bottoson was institutionalized. Dr. Pritchard concluded that Bottoson did not have significant deficiencies in adaptive behavior. The court stated: "The court finds Dr. Pritchard's testimony credible and accepts this explanation." [note] Hence, the trial court found that Bottoson was not mentally retarded because the evidence demonstrated that he failed to *127 meet two out of the three requirements of the test for evaluating mental retardation. Since the evidence supports the trial court's findings we find no error and affirm this determination.
[Note.] The trial court also pointed out that Dr. Henry Dee was the only expert to opine that Bottoson was mentally retarded. The court found Dr. Dee's testimony not credible because Dr. Dee's opinion was "unacceptably vague in light of the objective evidence." We give deference to the trial court's credibility evaluation of Dr. Pritchard's and Dr. Dee's opinions. See Porter v. State, 788 So.2d 917, 923 (Fla.2001) (giving deference to the trial court's acceptance of one mental health expert's opinion over another expert's opinion and stating "[w]e recognize and honor the trial court's superior vantage point in assessing the credibility of witnesses and in making findings of fact"). See also Stephens v. State, 748 So.2d 1028, 1034-35 (Fla.1999).
Bottoson, 813 So.2d at 33-34. As noted above, the Supreme Court denied certiorari to review this Court's opinion. Accordingly, this claim has been addressed and therefore should not serve as a basis for a stay of execution.
I am very concerned about the confusion which will certainly result for Florida's trial judges from this Court's stay of execution. These trial judges have to try cases and adjudicate postconviction motions this week.[15] This Court's entering of this stay of execution will clearly leave the impression that Ring has an effect at present on Florida's capital sentencing statute. Because the Supreme Court has repeatedly upheld Florida's statute and because Ring did not overrule any of these decisions, that impression is clearly incorrect. There are twenty-five years of precedent from the Supreme Court repeatedly upholding the constitutionality of Florida's capital sentencing statute, and nothing in Ring has affected those decisions.
NOTES
[1] On the other hand, I have agreed that we should deny the request for a stay in the case of Coday v. State, SC02-1456 (Fla. Jul. 8, 2002), because execution in that case is not imminent and there is no irreparable harm for the proceedings to continue in the trial court.
[2] Bottoson's execution date of July 8, 2002, is before the twenty-five day period for the filing of a motion for rehearing in Ring and before the date that the mandate will issue in that case. See Sup.Ct. R. 44 ("Any petition for rehearing of any judgment or decision of the Court on the merits shall be filed within 25 days after entry of the judgment or decision, unless the Court or a Justice shortens or extends the time."); Sup.Ct. R. 45 ("In a case on review from a state court, the mandate issues 25 days after entry of the judgment, unless the Court or a Justice shortens or extends the time, or unless the parties stipulate that it issue sooner. The filing of a petition for rehearing stays the mandate until disposition of the petition unless the Court orders otherwise.").
[3] Although I declined to vote in favor of a stay when Bottoson made such a request in the past, I am in favor of doing so now due to the far-reaching implications of Ring, which this Court needs to analyze thoughtfully and deliberately.
[4] The United States Supreme Court issued the Ring decision on June 24, 2002, and lifted the stay in Bottoson's case on June 28, 2002. On July 1, 2002, Bottoson's execution was set for July 8, 2002. Bottoson's pleadings were filed in this Court at noon on July 5, 2002, in which he seeks a stay of execution, full briefing and oral argument, and ultimately an order vacating his sentence of death and imposing a life sentence.
[5] As stated above, the petition was filed at noon on July 5, 2002. The State filed a response at noon on Sunday, July 7, 2002, and Bottoson filed a reply at 10 a.m. on Monday, July 8, 2002. Thus, there are only eight hours between the submission of the pleadings and the execution, which is set for 6 p.m. on Monday, July 8, 2002.
[6] See also Bridgers v. Texas, 532 U.S. 1034, 1034, 121 S.Ct. 1995, 149 L.Ed.2d 779 (2001) (opinion of Breyer, J., joined by Stevens, J., and Souter, J., respecting the denial of the petition for writ of certiorari) ("Because this Court may deny certiorari for many reasons, our denial expresses no view about the merits of petitioner's claim."); Knight v. Florida, 528 U.S. 990, 990, 120 S.Ct. 459, 145 L.Ed.2d 370 (1999) (opinion of Stevens, J., respecting the denial of the petitions for writ of certiorari) ("It seems appropriate to emphasize that the denial of these petitions for certiorari does not constitute a ruling on the merits."); Riggs v. California, 525 U.S. 1114, 1116, 119 S.Ct. 890, 142 L.Ed.2d 789 (1999) (opinion of Stevens, J., joined by Souter, J., and Ginsburg, J., respecting the denial of the petition for a writ of certiorari) ("The denial of this petition for certiorari, as always, does not constitute a ruling on the merits.... It is therefore prudent for this Court to await review by other courts before addressing the issue.") (citation omitted).
[7] Notably, in this case, the death recommendation was not unanimous; the vote was 10-2.
[8] See Mills v. Moore, 786 So.2d 532, 545 n. 8 (Fla.2001) (Pariente, J., dissenting) ("Nonetheless, I point out that a jury recommendation of life might, under a logical extension of the reasoning in Apprendi, preclude a trial court from overriding a jury's life recommendation.").
[9] Bottoson advises that at his trial, the court instructed the jury that the "penalty is for the Court to decide. You are not responsible for the penalty in any way because of your verdict," and that "it is now your duty to advise the Court as to what punishment should be imposed upon the Defendant for his crime of murder in the first degree. As you have been told, the final decision as to what punishment shall be imposed is the responsibility of the Judge." The jury instructions now provide:

The punishment for this crime is either death or life imprisonment without the possibility of parole. Final decision as to what punishment shall be imposed rests solely with the judge of this court; however, the law requires that you, the jury, render to the court an advisory sentence as to what punishment should be imposed upon the defendant.
Fla. Std. Jury Instr. (Crim.) (for § 921.141, Fla. Stat.); see also Combs v. State, 525 So.2d 853, 857 (Fla.1988) ("Clearly, under our process, the court is the final decision-maker and the sentencer-not the jury.").
[10] The Court in Ring specifically noted that the appellant was not arguing that the Sixth Amendment required the jury to make the ultimate determination whether to impose the death penalty. Ring, at 2437 n. 4. Indeed, Justice Scalia in his concurring opinion specifically articulated that the Court's decision "has nothing to do with jury sentencing.... Those States that leave the ultimate life-or-death decision to the judge may continue to do soby requiring a prior jury finding of an aggravating factor in the sentencing phase." Ring, at 2445 (Scalia, J., concurring). The Ring Court thus left judicial sentencing under Proffitt undisturbed.
[11] Aside from these concerns, Bottoson advances several other arguments that require meaningful consideration by this Court. These include whether if Ring does affect Florida's sentencing scheme, that application is retroactive.
[12] Similar to Bottoson's case, this Court rendered a final adjudication in King's case for the 1977 murder of Natalie Brady. See King v. State, 808 So.2d 1237 (Fla.2002), cert. denied, ___ U.S. ___, 122 S.Ct. 2670, 153 L.Ed.2d 843 (2002). The Supreme Court granted King a stay of execution the day before his scheduled execution. See King v. Florida, 534 U.S. 1118, 122 S.Ct. 932, 151 L.Ed.2d 894 (2002).
[13] See King v. State, 808 So.2d 1237 (Fla. 2002), cert. denied, ___ U.S. ___, 122 S.Ct. 2670, 153 L.Ed.2d 843 (2002); Bottoson v. State, 813 So.2d 31 (Fla.2002), cert. denied, ___ U.S. ___, 122 S.Ct. 2670, 153 L.Ed.2d 844 (2002); Looney v. State, 803 So.2d 656, 675 (Fla.2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2678, 153 L.Ed.2d 850 (2002) (direct appeal decision); Hertz v. State, 803 So.2d 629, 648 (Fla.2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2673, 153 L.Ed.2d 846 (2002) (direct appeal decision); Card v. State, 803 So.2d 613, 628 n. 13 (Fla. 2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2673, 153 L.Ed.2d 845 (2002) (direct appeal decision); Mann v. Moore, 794 So.2d 595, 599 (Fla.2001), cert. denied, ___ U.S. ___, 122 S.Ct. 2669, 153 L.Ed.2d 843 (2002). As previously noted, King and Bottoson were under active death warrants at the time of their filing with the Supreme Court.
[14] In footnote 6 of Ring decision, the Supreme Court expressly stated that Florida's capital sentencing statute was different from Arizona's capital sentencing statute. See Ring, at 2442 n. 6.
[15] Indeed, on Friday, July 5, 2002, a defendant convicted of first-degree murder but not yet sentenced filed in this Court for the extraordinary writs of prohibition and mandamus citing Ring seeking to stay the remainder of the penalty phase proceedings and to require the trial court to impose a life sentence. See Coday v. State, SC02-1456, petition at 7 (Fla. petition filed July 5, 2002).