959 So.2d 146 (2007)
Paul Alfred BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. SC05-1018.
Supreme Court of Florida.
April 12, 2007.
Rehearing Denied June 7, 2007.
John W. Jennings, Capital Collateral Regional Counsel, Middle Region, Carol C. Rodriguez, Assistant CCRC, Tampa, FL, for Appellant.
Bill McCollum, Attorney General, Tallahassee, Florida and Robert J. Landry, Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
This case is before the Court on appeal from an order denying a motion to vacate a sentence of death under Florida Rule of Criminal Procedure 3.850. Because the order concerns postconviction relief from a sentence of death, this Court has jurisdiction of the appeal under article V, section 3(b)(1), Florida Constitution. For the reasons that follow, we affirm the trial court's finding that Paul Alfred Brown is not mentally retarded and affirm its denial of relief.
*147 After confessing to the police, Brown was convicted of first-degree murder, as well as other crimes, in the 1986 murder of seventeen-year-old Pauline Cowell. The judge followed the jury's recommendation of death, finding that the aggravating factors outweighed the mitigating factors that were presented, and sentenced Brown to death. This Court affirmed his convictions and sentence of death on direct appeal. See Brown v. State, 565 So.2d 304 (Fla. 1990), abrogated on other grounds by Jackson v. State, 648 So.2d 85 (Fla.1994). Brown filed a motion for postconviction relief, which was denied. Brown v. State, 755 So.2d 616 (Fla.2000). The Court also denied Brown's petition for a writ of habeas corpus. Brown v. Moore, 800 So.2d 223 (Fla.2001).
In September of 2001, Brown filed a successor motion to vacate sentence,[1] asserting that he is mentally retarded based on the definition provided in section 921.137, and hence the penalty of death must be vacated. The trial court held an initial evidentiary hearing in the case, at which time the State and the defendant presented conflicting expert opinions as to whether Brown was mentally retarded. Brown presented Dr. Valerie McClain, and the State presented Dr. Gregory Prichard. The court then appointed its own expert, Dr. Michael Maher, and an additional evidentiary hearing was conducted. On April 25, 2005, the lower court entered an order denying relief as follows:
As in Bottoson [v. State, 813 So.2d 31 (Fla.2002)], three doctors were enlisted to evaluate the mental capacity of Defendant in regard to the instant motion. Drs. Valerie McClain, Gregory Prichard, and Michael Maher each submitted an evaluation on defendant's mental capacity and testified as to their findings. Drs. Prichard and Maher determined Defendant to be mentally competent, but Dr. McClain found Defendant to be mildly mentally retarded.
The Court has struggled with the determination made by Dr. McClain. Recent testing suggests that Defendant's IQ is near the mildly mentally retarded range. However, Dr. McClain's report of Defendant's adaptive functioning indicates that Defendant would be classified in the severely mentally retarded range. It is this inconsistency in Dr. McClain's reporting that gives the Court pause.
It seems that Dr. McClain relies very heavily on the language of the rule regarding the onset of mental deficits prior to age 18, ignoring the fact that mental deficits must manifest by age 18 and exist presently. Dr. Prichard specifically addresses this point during his testimony. Furthermore, on cross-examination, defense counsel inquired into Dr. Prichard's reasoning for failing to interview individuals to comment on Defendant's adaptive functioning prior to age 18. Dr. Prichard explained that due to the fact that Defendant's present adaptive functioning did not meet the *148 criteria for mental retardation, there was no reason to address the third prong of the test for retardation.
Dr. McClain testified regarding Defendant's ability to maintain a five-year intimate relationship, "I do believe that was after he was 18." That Defendant may have been described at an early age as having socialization issues, does not mean that he satisfies the statutory definition of mentally retarded if he is currently able to socialize and adapt at an acceptable level. The mental deficits have to manifest prior to 18 and continue to exist presently, or concurrently with significant subaverage general intellect. Dr. McClain failed to report on Defendant's current adaptive functioning.
Contrary to Dr. McClain's assessment, Drs. Prichard and Maher each tested the Defendant and found that the recent IQ scores suggesting a range of mildly mentally retarded were a result of malingering.[n. 1] Dr. Prichard believes Defendant to be in the "high end of the borderline range or at the low end of the average range." According to Drs. Prichard and Maher, it is reasonable to believe that a person in Defendant's situation has a strong motivation to perform poorly on examinations in order to be declared mentally retarded.
[n. 1] Dr. Prichard testified that he did not believe Defendant's IQ score of 68 represented an accurate reporting. Specifically, Dr. Prichard felt that Defendant was purposely hesitating in giving responses.
Dr. Maher testified that he believed the testing he performed on Defendant did not accurately reflect Defendant's true intellectual capabilities.
Likewise, the results of the Vineland test administered by Dr. Prichard suggest Defendant is not mentally retarded in terms of adaptive functioning.[n. 2] Dr. Prichard commented on the level of support needed by an individual that scores 29 in adaptive functioningthe value attributed by Dr. McClain in her examination:
An adaptive functioning of 29 would correspond to a support level of extensive. It would mean the person would need extensive support, which is characterized by individuals requiring extensive or continuous support and supervision. For example, an individual may attain beginning self-care skills, but may need continuous supervision from someone within the same room or nearby.
[n. 2] Dr. Prichard testified that he has administered the Vineland test approximately 300 times. Dr. Prichard's results from the administration of the Vineland test was accepted by the trial court in Bottoson v. State, 813 So.2d 31 (Fla.2002).
Dr. Prichard's examination supports the fact that Defendant is clearly capable of caring for himself and places extreme doubt on the validity of Dr. McClain's assessment.[n. 3] Therefore, the Court finds Dr. Prichard's and Dr. Maher's analysis to be accurate. Based on Dr. Prichard's, Dr. Maher's, and the Court's observations of the Defendant and on the doctors' determination that Defendant is not mentally retarded, the Court finds that Defendant is not entitled to the relief requested.
[n. 3] Dr. Prichard lists the tasks Defendant has been able to perform and continues to do.
Brown appeals this order.
To establish mental retardation, Brown must demonstrate all three of the following: (1) significantly subaverage general intellectual functioning; (2) concurrent deficits in adaptive behavior; and *149 (3) manifestation of the condition before age eighteen. Fla. R.Crim. P. 3.203(b).[2] The trial court determined that based on the three experts' evaluations, Brown did not come within the definition of mental retardation. When reviewing the trial court's findings relative to the existence of mental retardation, this Court looks to whether competent, substantial evidence supports the trial court's findings. See Trotter v. State, 932 So.2d 1045, 1049 (Fla. 2006). This Court does not reweigh the evidence or second-guess the circuit court's findings as to the credibility of witnesses. Id. at 1050. As stated in Tibbs v. State, 397 So.2d 1120 (Fla.1981):
As a general proposition, an appellate court should not retry a case or reweigh conflicting evidence submitted to a jury or other trier of fact. Rather, the concern on appeal must be whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the [decision].
Id. at 1123 (footnote omitted).
The testimony presented at the evidentiary hearing showed that Brown has seen numerous mental health experts since he was ten years old. Several IQ tests placed Brown in the mildly mentally retarded range, and there were references as to some deficits in his adaptive functioning skills. On the other hand, some of his IQ scores were higher than what a mentally retarded person would have, particularly as to Brown's performance IQ. Dr. McClain offered one explanation of this disparity, contending that the higher scoring tests were not the proper tests or they were outdated and needed to be adjusted. The other experts disagreed that an adjustment was needed and further asserted that these higher IQ scores established that Brown was capable at times of performing better than one who is mentally retarded. As a result, they concluded that any deficits in Brown's IQ were not caused by mental retardation but were caused by malingering and mental disorders which appeared on a sporadic basis.
In Cherry v. State, No. SC02-2023, ___ So.2d ___, 2007 WL 1074931 (Fla. Apr. 12, 2007), we held that the statutory definition of mental retardation required a showing that a defendant had an IQ score of 70 or below. Here, the trial court found that there was a question as to the accuracy of the IQ testing and proceeded to the evaluation of the second prong of the statutory definition of mental retardation, i.e., concurrent deficits in adaptive behavior. As to this second prong, the case became a conflict between the opinions of the experts which had to be resolved by the trial judge after weighing the evidence, listening to the expert testimony, and judging overall credibility of each. The trial *150 judge's order denying relief clearly showed that the court was troubled with the testimony of Brown's expert, Dr. McClain, particularly in regard to her report that Brown's adaptive functioning indicates that he is in the severely mentally retarded range and would need extensive or continuous support. This report was contradictory to the evidence that Brown was engaged in a five-year intimate relationship prior to the crime, that he had his driver's license and drove a car, and that he was employed in numerous jobs including as a mechanic.
In this appeal, the defendant essentially argues that the trial court should have weighed Dr. McClain's testimony more heavily and discounted the testimony of Drs. Prichard and Maher based on the testimony of Dr. McClain. However, questions relating to evidentiary weight and credibility of witnesses are reserved to the trial court. See, e.g., Trotter, 932 So.2d at 1050 ("[T]he question of evidentiary weight is reserved to the circuit court, and this Court does not reweigh the evidence. . . . The determination of the credibility of witnesses also is reserved to the trial court."); Bottoson v. State, 813 So.2d 31, 33 n. 3 (Fla.2002) ("We give deference to the trial court's credibility evaluation of Dr. Pritchard's and Dr. Dee's opinions."); Porter v. State, 788 So.2d 917, 923 (Fla. 2001) ("We recognize and honor the trial court's superior vantage point in assessing the credibility of witnesses and in making findings of fact."). In this case, the trial court clearly found that Dr. McClain's testimony was not as credible as the testimony presented by the other expert witnesses. After all conflicts in the evidence and all reasonable inferences have been resolved in favor of the trial court's decision, there is competent, substantial evidence to support this decision.
As the record provides competent, substantial evidence supporting the trial court's findings, we affirm the decision that Brown is not mentally retarded.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, CANTERO, and BELL, JJ., concur.
QUINCE, J., recused.
NOTES
[1] The motion also requested the trial court to declare a provision of section 921.137, Florida Statutes (2001), unconstitutional since section (8) of the statute stated that it was not to be applicable to defendants who were sentenced to death prior to the effective date of the act. Following Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), we adopted Florida Rule of Criminal Procedure 3.203, which adopted the statutory definition of mental retardation and recognized that Atkins applies to defendants currently on death row. See Phillips v. State, 894 So.2d 28, 39-40 (Fla.2004) (holding that one may file an Atkins claim under rule 3.203 even if section 921.137 did not exist at time of sentencing). This renders moot the claim that the statute is unconstitutional. Moreover, the trial court determined Brown's claim of mental retardation using the statutory definition.
[2] Likewise, section 921.137 defines mental retardation as follows:

[T]he term "mental retardation" means significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the period from conception to age 18. The term "significantly subaverage general intellectual functioning," for the purpose of this section, means performance that is two or more standard deviations from the mean score on a standardized intelligence test specified in the rules of the Agency for Persons with Disabilities. The term "adaptive behavior," for the purpose of this definition, means the effectiveness or degree with which an individual meets the standards of personal independence and social responsibility expected of his or her age, cultural group, and community. The Agency for Persons with Disabilities shall adopt rules to specify the standardized intelligence tests as provided in this subsection.
§ 921.137(1), Fla. Stat. (2006) (emphasis added).