935 So.2d 614 (2006)
Keith George CAMPBELL, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D04-1994.
District Court of Appeal of Florida, Third District.
August 9, 2006.
*615 Bennett H. Brummer, Public Defender, and Robert Godfrey, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Michael E. Hantman, Assistant Attorney General, for appellee.
Before, COPE, C.J., and WELLS, J., and SCHWARTZ, Senior Judge.
WELLS, J.
Keith George Campbell appeals his convictions and sentences for conspiracy to traffic in cocaine with a firearm, attempted trafficking in cocaine with a firearm, and conspiracy to commit robbery with a firearm. On appeal, Campbell raises five issues claiming (1) that he could not be convicted for two conspiracies where only one conspiracy existed; (2) he could not be convicted of attempted trafficking in cocaine where no cocaine existed; (3) that his offenses could not be reclassified for possession of a firearm where he never actually possessed a weapon; (4) that he could not be sentenced as a violent career criminal where the crimes for which he was being sentenced are not forcible felonies; and (5) that the trial court erred in failing to give an objective entrapment jury instruction. We agree that some of these claims have merit and address each of them below.
Campbell's convictions stem from a sting operation conducted by the Miami-Dade *616 Police Department as part of S.T.O.P.a multi-law enforcement task force designed, through the use of confidential informants, to proactively target individuals engaged in drug related "rip-offs." In October 2000, a task force member was advised by a confidential informant[1] that Campbell wanted to make some money and was interested in participating in a crime.[2] Upon hearing this, the task force crafted a plan where a task force officer would pose as a disgruntled drug courier who needed help in ripping-off his employer's cocaine.
Campbell thereafter participated in two meetings with task force members regarding this plan. The confidential informant brought Campbell to the first meeting in a parking lot where a task force officer posing as a drug courier told Campbell that he wanted to steal his employer's cocaine but could not do it himself because other drug dealers would kill him. The officer stated that he "wanted to see if anybody would help him or not." The second meeting took place at a fast food restaurant between the informant, Campbell, Campbell's friends, and the task force officer, during which the plan to rip-off the "employer's" cocaine was rehashed. Both of these meetings were videotaped.
Task force members thereafter contacted Campbell two additional times by telephone, each time providing Campbell with the opportunity to back out of the plan. Campbell wanted to proceed with the plan.[3]
Thereafter, acting on the rip-off plan, the informant picked up Campbell and three of his friends, and the "tools" needed for the rip-off and brought them to a warehouse where the four (one of whom was carrying a blue bag) got into an SUV to be used in the rip-off. At that point, the police announced an arrest. Campbell's friends fled; Campbell remained with the SUV. All were arrested.
The blue bag that was carried into the SUV by one of the men was recovered from behind the driver's seat, the seat occupied by Campbell. It contained a 12-gauge shotgun. A .38 caliber gun was found close to where Campbell's two friends were apprehended and a .25 caliber semiautomatic was found in one of the men's pocket. An additional weapon, a.380 caliber semiautomatic, also was recovered from where one on Campbell's friends had thrown it.
Campbell was charged with armed conspiracy to commit trafficking in cocaine, attempted armed conspiracy to traffic in cocaine, use or display of a firearm while committing a felony, armed conspiracy to commit robbery, and possession of a firearm or weapon by a convicted felon. Campbell testified at trial admitting that he committed the charged offenses and that he had a substantial criminal record. He claimed, however, that he acted under the influence of the confidential informant.
Campbell was found guilty of conspiracy to traffic in cocaine with a firearm, attempted trafficking in cocaine with a firearm, and conspiracy to commit robbery with a firearm. He was sentenced to life imprisonment for conspiracy to traffic in cocaine with a firearm and attempted trafficking in cocaine with a firearm and to 40 *617 years imprisonment for conspiracy to commit robbery with a firearm. He was adjudicated a violent career criminal and received a 15 year minimum mandatory sentence on the conspiracy to traffic in cocaine with a firearm count, a life minimum mandatory sentence on the attempted trafficking in cocaine with a firearm count, and a 30 year minimum mandatory sentence on the conspiracy to commit robbery with a firearm count, all to run concurrently. He raises five challenges to these convictions and sentences.
First, Campbell argues, and the State agrees, that the trial court erred in convicting him of both conspiracy to traffic in cocaine with a firearm and conspiracy to commit robbery with a firearm, where only one conspiracy existed. "A criminal conspiracy is the agreement to commit a criminal act or acts, and if a single agreement exists, only one conspiracy exists even if the conspiracy has as its objectives the commission of multiple offenses. The conspiracy continues to exist until consummated, abandoned, or otherwise terminated by some affirmative act." Durden v. State, 901 So.2d 967, 968 (Fla. 2d DCA 2005) (citing Doolin v. State, 650 So.2d 44, 44-45 (Fla. 1st DCA 1995)); see Epps v. State, 354 So.2d 441, 442 (Fla. 1st DCA 1978) ("[a] single conspiracy may have for its object the violation of two or more criminal laws or two or more substantive offenses. The conspiracy is still one offense, no matter how many repeated violations of the law may have been the object of the conspiracy"). Since only a single conspiracy with the dual goals of committing armed trafficking and armed robbery was proved to exist, one of the conspiracy convictions, and its accompanying sentence, must be vacated.
Second, Campbell argues that he cannot be convicted for attempted trafficking in cocaine where no cocaine existed. We disagree. While trafficking requires the existence of cocaine, attempted trafficking in cocaine does not. § 777.04(1), Fla. Stat. (2005) ("[a] person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but . . . [is] prevented in the execution thereof, commits the offense of criminal attempt"); Brooks v. State, 762 So.2d 879, 897 (Fla. 2000) (confirming that to establish attempted trafficking in cocaine no actual cocaine must be proved to exist); State v. Cohen, 409 So.2d 64, 64-65 (Fla. 1st DCA 1982) (confirming that no cocaine need exist to support a conviction for attempted sale of cocaine because "[c]riminal attempt occurs when (1) there is intent to commit a crime, and (2) there is an overt act which (3) falls short of the ultimate design due to circumstances independent of the will of the attemptor"). Campbell admitted that he intended to and acted to traffic in cocaine. He cannot, therefore, avoid conviction for attempting to do so because the lack of cocaine thwarted his objective. See Cohen, 409 So.2d at 65 (holding that "the defendants should not be allowed to escape prosecution because an independent circumstance intervened to prevent the crime they intended to commit and acted to carry out").
Third, Campbell argues that there was insufficient evidence that he possessed a firearm to reclassify the conspiracy to traffic in cocaine and attempted trafficking in cocaine charges under section 775.087(1), Florida Statutes (2000).[4] We agree.
*618 "[W]hen a defendant is charged with a felony involving the `use' of a weapon, his or her sentence cannot be enhanced under section 775.087(1) without evidence establishing that the defendant had personal possession of the weapon during the commission of the felony." State v. Rodriguez, 602 So.2d 1270, 1272 (Fla.1992). The Florida Supreme Court has repeatedly held that "actual physical possession of a weapon during the commission of a crime is required for the offense to be reclassified under section 775.087(1)." Robins v. State, 602 So.2d 1272, 1273 (Fla.1992); see Williams v. State, 622 So.2d 456, 465 (Fla. 1993) ("[i]n order for a defendant's sentence to be enhanced pursuant to section 775.087(1)-(2), Florida Statutes (1991), the State must prove that the defendant had actual physical possession of the weapon").
There is no evidence that Campbell had actual physical or personal possession of a weapon at any time during the conspiracy. The testimony was that the confidential informant, driving a van wired for sound, picked up Campbell, Campbell's friends and the "tools" that had been discussed in prior phone conversations for use in the rip-off. On the way to the SUV that they were to use in the rip-off, the co-conspirators discussed the use of guns and gloves in the planned robbery. Although one of the task force officers saw one of the conspirators carrying a blue bag (in which a shotgun ultimately was found) as the conspirators got into the SUV, there is no testimony that it was Campbell who carried the bag. Because there is no evidence that Campbell had either actual physical or personal possession of a firearm or weapon, the conspiracy to traffic and attempted trafficking in cocaine charges were improperly reclassified under section 775.087(1) and Campbell must be resentenced on these convictions.[5]
Fourth, Campbell argues that because conspiracy and attempt are not forcible felonies as defined by section 776.08 of the Florida Statutes, he could not be sentenced as a violent career criminal under section 775.084(1)(d)(1). We agree.
Section 775.084(1)(d)(1) in pertinent part provides:
(d) "Violent career criminal" means a defendant for whom the court must impose imprisonment pursuant to paragraph (4)(d), if it finds that:
1. The defendant has previously been convicted as an adult three or more times for an offense in this state or other qualified offense that is:
a. Any forcible felony, as described in s. 776.08;
b. Aggravated stalking . . .
c. Aggravated child abuse ...
d. Aggravated abuse of an elderly person or disabled adult . . .
e. Lewd or lascivious battery, lewd or lascivious molestation, lewd or lascivious conduct, or lewd or lascivious exhibition .. .
f. Escape .. .
g. A felony violation of chapter 790 involving the use or possession of a firearm.
Conspiracy and attempt obviously are not enumerated qualifying offenses under this provision. Nor are they "forcible felonies" *619 expressly listed in section 776.08.[6] They also do not fall within section 776.08's "other felony which involves the use or threat of physical force or violence against any individual" rubric.
Such felonies are those "whose statutory elements include the use or threat of physical force or violence against an[] individual." Perkins v. State, 576 So.2d 1310, 1313 (Fla.1991). The elements of attempt are intent to commit a crime and an overt act in furtherance of that intent. See Brooks, 762 So.2d at 897 ("To establish attempted trafficking in cocaine, the State was required to present evidence establishing beyond a reasonable doubt that Brooks intended to commit the offense and committed an overt act toward its completion."). The statutory elements of conspiracy are intent and agreement. See Montano v. State, 879 So.2d 1264, 1265 (Fla. 3d DCA 2004) (stating that the elements of the crime of conspiracy are "an agreement and an intention to commit an offense").
Because the elements of conspiracy and attempt do not necessarily include the use or threat of physical force or violence against any individual, Campbell did not qualify as a violent career criminal. See Hudson v. State, 800 So.2d 627, 629 (Fla. 3d DCA 2001)(concluding that crime at issue, throwing a deadly missile into a hotel lobby, could not be a qualifying felony under the violent career criminal statute where it did not "necessarily involve physical force or violence against an individual").
Fifth, Campbell argues that the trial court erred in refusing to give his requested jury instruction on objective entrapment. We disagree.
Objective entrapment, unlike subjective entrapment, focuses on the conduct of law enforcement and operates as a bar to prosecution in those instances where government conduct "so offends decency or a sense of justice" that it amounts to a denial of due process. State v. Blanco, 896 So.2d 900, 901 (Fla. 4th DCA 2005); State v. Taylor, 784 So.2d 1164, 1167 (Fla. 2d DCA 2001) (stating that the rule requiring dismissal where police conduct amounts to a denial of due process "is narrowly applied and is limited to those instances where the government's conduct so offends decency or a sense of justice that the judicial power may not be exercised to obtain a conviction"); Munoz v. State, 629 So.2d 90, 98 (Fla.1993)("[b]ecause the legislature cannot abrogate an accused's due process rights, [statutory limitations on the defense of entrapment are] inapplicable whenever a judge determines as a matter of law that law enforcement personnel have violated an accused's due process rights"). While "defining the limits of due process is difficult because due process is not a technical, fixed concept; ... it is a general principle of law that prohibits prosecutions brought about by methods offending one's sense of justice." Munoz, 629 So.2d at 98.
Where such conduct exists, the remedy is dismissal:
The due process defense based upon governmental misconduct is an objective question of law for the trial court, as opposed to the subjective predisposition *620 question submitted to the jury in the usual entrapment defense. . . .
* * * *
Based upon the due process provision of article I, section 9 of the Florida Constitution, we agree ... that government misconduct which violates the constitutional due process rights of a defendant, regardless of that defendant's predisposition, requires dismissal of criminal charges.
State v. Glosson, 462 So.2d 1082, 1084, 1085 (Fla.1985) (determining that the trial court had sufficient undisputed facts before it to warrant dismissal as a matter of law); Munoz, 629 So.2d at 99 (noting that "in the presence of egregious law enforcement conduct, an entrapment defense is to be evaluated under the due process provision of article I, section 9 of the Florida Constitution as in Glosson"); Blanco, 896 So.2d at 901 ("[w]hen government conduct violates a defendant's due process rights, the remedy is dismissal"); Taylor, 784 So.2d at 1167 ("[i]f the actions of a law enforcement officer amount to a denial of a defendant's right to due process, dismissal of the charges may be warranted").
In this case, Campbell never sought dismissal. Nor would dismissal have been appropriate. The testimony was that the police responded to a known felon with seventeen prior convictions who was in need of money, who had expressed an interest in participating in a crime, and who actively participated in the planning of a drug courier rip-off. Even considering Campbell's declaration that he was acting under an informant's influence because the informant had given him drugs and small amounts of money so that he and his girlfriend could rent a hotel room to do drugs away from his disapproving mother, no egregious law enforcement conduct of the ilk recognized as violating due process was demonstrated[7]:
The type of conduct held to violate due process is that which so offends decency or a sense of justice that judicial power may not be exercised to obtain a conviction. See, e.g., State v. Glosson, 462 So.2d 1082 (Fla.1985) (law enforcement entering into a contingency contract with informants to obtain convictions); Cruz v. State, 465 So.2d 516 (Fla.), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985) (law enforcement officer appearing inebriated and hanging money from his pocket in high crime area); State v. Williams, 623 So.2d 462 (Fla.1993) (illegal manufacture of crack cocaine by law enforcement officials for use in reverse-sting operation); Soohoo v. State, 737 So.2d 1108 (Fla. 4th DCA 1999) (undercover agent's consignment arrangement for sale of drugs).
Blanco, 896 So.2d at 901.
Having failed to demonstrate a violation of due process as a matter of law, dismissal would have been inappropriate even if it had been requested, thus, in this case, the standard jury instruction on entrapment was a correct statement of the law. Munoz, 629 So.2d at 99 ("the subjective test set forth in section 777.201 is the test to be applied on the issue of entrapment in the absence of egregious law enforcement conduct)"; see Guerra-Villafane v. Singletary, 729 So.2d 972, 974 (Fla. 3d DCA 1999)(observing that standard entrapment instruction "comport[s] with Munoz").
*621 Accordingly, this matter is remanded to the trial court to permit the State to withdraw one of the conspiracy counts and for resentencing consistent with this opinion.
Affirmed in part, reversed in part, and remanded for further proceedings.
NOTES
[1] This informant had been a registered informant with the police department for several years and ultimately was paid $3,000 for his work in this case.
[2] The informant, who had met Campbell in jail, came into contact with Campbell during one of a number of visits to Campbell's mother regarding refinancing of a mortgage that was in default.
[3] Each of these meetings and telephone conversations were recorded. The recordings were played for the jury at trial.
[4] Section 775.087(1) provides:

Unless otherwise provided by law, whenever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element, and during the commission of such felony the defendant carries, displays, uses, threatens to use, or attempts to use any weapon or firearm, or during the commission of such felony the defendant commits an aggravated battery, the felony for which the person is charged shall be reclassified....
[5] This is so even though there were four coconspirators, four guns were recovered, and that the blue bag holding the 12-gauge shotgun was found on the floor behind Campbell's seat in the SUV.
[6] Section 778.06 defines the term forcible felony as "treason; murder; manslaughter; sexual battery; carjacking; home-invasion robbery; robbery; burglary; arson; kidnapping; aggravated assault; aggravated battery; aggravated stalking; aircraft piracy; unlawful throwing, placing, or discharging of a destructive device or bomb; and any other felony which involves the use or threat of physical force or violence against any individual." § 776.08, Fla. Stat. (2005).
[7] A videotape of the first meeting between the informant, Campbell and the task force member/drug courier shows Campbell, without prompting or encouragement, aggressively pursuing the rip-off and personally detailing a rip-off plan while the informant remained virtually silent. This videotape, shown to the jury, unequivocally confirmed that Campbell was not under the influence of the informant or drugs.