SALTER, J.
Santo Hernandez appeals his conviction and sentence for first-degree felony murder. Hernandez raises two issues here. He challenges the sufficiency of the evidence to establish the predicate offense of trafficking or attempted trafficking in cocaine,[1] and he argues that certain statements to a jailhouse informant should have been suppressed. Finding no merit to either claim, we affirm.

The Evidence at Trial

According to Hernandez’s pretrial statement,[2] his longtime friend George Collazo asked Hernandez to see if he could find someone interested in buying some cocaine from Collazo. Hernandez suggested the name of co-defendant Ricky Valle, because Hernandez had heard that Valle dealt in that business in the past. Two or three weeks later, Collazo asked Hernandez if he could use Hernandez’s townhome in Hialeah for Collazo’s business with Valle. Hernandez agreed.
The morning of the “transaction,” Hernandez called Valle to see if everything was okay. Hernandez said that he was “like the middleman.” No one else was present in the townhome. Valle showed up first, and Hernandez let him into the home. Valle brought in a bag and went upstairs, according to Hernandez.
Hernandez recalled that the deal was to be a $30,000 sale of drugs by Collazo to Valle. Collazo and Michel Aleman arrived at the townhome. Collazo was carrying a box about two feet high, talking on a cellphone as he came through the door. Hernandez said that almost immediately after that, he saw Valle, gloved and with a gun in his hand, come from behind Collazo and Aleman and shoot each of them. Hernandez said that Valle threatened Hernandez’s life and his family’s life “if you open your mouth and you don’t help and cooperate.”
At Valle’s insistence, Hernandez helped clean up the blood and a spent shell casing in the townhome, and take the bodies of the victims (wrapped in comforters Valle had taken from the townhome) to the victims’ truck. Hernandez said that Valle then drove away with them. Prosecution witnesses testified at the trial that the bodies, still in the comforters, and the truck were abandoned and charred when found. According to Hernandez, Valle left the townhome with the box that had been brought to the “transaction” by Collazo.
Hernandez’s girlfriend, who also lived in the townhome, was called as a prosecution witness at trial. On the day of the murders, Hernandez picked her up from her beauty school and brought her home. When she arrived, she noticed a bullet hole in the door and a broken sliding glass door. She did not believe Hernandez’s explanations and demanded that he move out. He did so that night. His girlfriend testified that later Hernandez asked her to bring him a white box from the townhome. She found the white package and opened it, but flushed the contents down the toilet instead of taking it to Hernandez. She said that the substance inside the package was cocaine, not “real,” but fake.
*490 A jailhouse informant, Cesar Morales, also testified for the prosecution. Morales testified that Hernandez admitted that on the day of the murders, Hernandez planned to give the victims 10 kilos of fake cocaine for $220,000 to $230,000.[3] In this account by Morales, Collazo discovered that the “cocaine” was fake and Hernandez, not Valle, fired the shots that killed the victims. Hernandez moved to suppress this testimony on grounds that Morales was an agent for the State, but the motion was denied.

First Issue: Sufficiency of the Evidence of “Trafficking”

The State is correct that the predicate felony for Hernandez’s felony murder charge included “attempted trafficking,” allowing proof of an intention to commit the offense without proof that the substance involved is actually cocaine. Brooks v. State, 762 So.2d 879, 897 (Fla.2000). Hernandez argues, however, that the State’s case was insufficient because there was no evidence of an intention to purchase or possess 28 or more grams. We disagree.
In Hernandez’s taped statement, he characterized the “transaction” as one for $30,000 and said that Collazo, the seller, arrived with a box two or three feet in size. The jurors could fairly conclude that a box would not be used to transport slightly less than an ounce of cocaine.
According to Hernandez’s girlfriend, Hernandez was sufficiently concerned about the “package” that remained in the townhome to want her to remove it. Whether it was real or fake cocaine, the jury could have concluded that Hernandez thought it was the $30,000 worth of cocaine brought to him by Collazo. The jury could have concluded that such a transaction involves an ounce or more.[4] In Hernandez’s account provided by the jailhouse informant, the transaction was for 10,000 grams and for a price of $220,000 to $230,000. That evidence also supports a conclusion that Hernandez was engaged in attempted trafficking. Brown v. State, 959 So.2d 146, 150 (Fla.2007). For his part, Hernandez has not shown a reasonable doubt that the transactions described by the witnesses were for less than 28 grams. See Madruga v. State, 434 So.2d 331 (Fla. 3d DCA 1983).

Second Issue: Informant as “Agent for the State”

The evidence demonstrated that Morales merely reported what he heard from a “talkative inmate,” Hernandez, “without having been deputized by the government to question that defendant.” United States v. Birbal, 113 F.3d 342, 346 (2d Cir.1997). There was no evidence that law enforcement personnel directed Morales to obtain information from Hernandez, or that Morales “deliberately elicited” incriminating statements from Hernandez. Kuhlmann v. Wilson, 477 U.S. 436, 457, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986). Accordingly, Hernandez’s motion to suppress was properly denied.
Affirmed.

. "Trafficking” in cocaine involves the sale, purchase, manufacture, delivery, receipt, or possession of 28 grams or more. 28 grams is a little less than one ounce. § 893.135, Fla. Stat. (2005).

. At trial, Hernandez’s taped statement was played for the jury.

. Ten kilos is 10,000 grams, about 22 pounds.

. Trial judges at the criminal court, prosecutors, defense lawyers — and probably even many jurors — know from other cases and news accounts that the price of an ounce of cocaine was (in 2002) and is far less than $30,000. The "price for quantity” data, though best known by criminals, is also publicized by law enforcement as one metric regarding the efforts to cut the supply chain. The State could have established street values rather easily. The State’s evidence, however, included other facts sufficient to allow the jury to conclude that the quantity was 28 grams or more.