QUINCE, J.
We have for review the decision of the Third District Court of Appeal in Hernandez v. State, 994 So.2d 488 (Fla. 3d DCA 2008). Petitioner Santo Hernandez argues that the evidence presented at trial was insufficient to prove that he was engaged in the trafficking or attempted trafficking of cocaine where the State failed to present evidence of the quantity of drugs involved in the alleged transaction. Hernandez contends that, in upholding his conviction, the Third District is in express and direct conflict with the decision of the First District Court of Appeal in Williams v. State, 592 So.2d 737 (Fla. 1st DCA 1992), on a question of law. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons expressed below, we vacate Hernandez’s convictions for first-degree felony murder and remand to the district court with instructions to direct the entry of judgments for third-degree felony murder.
FACTS AND PROCEDURAL HISTORY
Hernandez was charged by indictment in February 2003 with two counts of first-degree felony murder in the deaths of victims George Collazo and Michel Ale-man. The indictment alleged that on December 12, 2002, the victims were killed while Hernandez was engaged in the perpetration of, or the attempt to perpetrate, the felony offense of trafficking in cocaine, in violation of section 893.135(1), Florida Statutes (2002). See § 782.04(1)(a)2., Fla. Stat. (2002) (providing that an unlawful killing committed during the perpetration or attempt to perpetrate a trafficking offense under section 893.135(1) is punishable as murder in the first degree). The indictment also charged Hernandez as a principal in the first degree, see § 777.011, Fla. Stat. (2002), making him liable for any actions of his coper-petrator. See generally Hodge v. State, 970 So.2d 923, 927 (Fla. 4th DCA 2008) (explaining that the focus in a felony murder charge is not on the accused’s role in the actual killing, but on his or her participation in the underlying felony). After a three-day jury trial ending on January 12, 2007, Hernandez was found guilty of two counts of first-degree felony murder without personal possession of a firearm.
*755 The evidence at trial demonstrated that on December 12, 2002, officers of the Hialeah Police Department responded to a call alerting them to a burning truck containing two bodies in the rear cargo area. The bodies themselves were partially burned and each body was partially wrapped in a comforter. Identification was found on both corpses, indicating that the men were Michel Aleman and George Collazo. The victims’ identities were later confirmed by dental records. A medical examiner testified that the victims had died as a result of gunshot wounds and that the burning had occurred after death.
Detectives obtained Collazo’s phone records and learned that numerous phone calls had been exchanged between Collazo and a cellular phone belonging to Hernandez between 8:54 a.m. and 11:56 a.m. on the morning of December 12. Based on the phone records, the police were able to link Hernandez to the residence of Vicky Rodriguez. Rodriguez was asked to come to the police station. There, she informed officers that she and Hernandez were in a romantic relationship and that Hernandez had been living at her home for several months. She told the officers that on December 12, Hernandez had called to tell her that he had broken a sliding glass door by falling through it. She became suspicious when Hernandez told her that he was not injured. When she arrived home and discovered a bullet hole in her front door as well as the broken sliding glass door, Hernandez first told her that there had been a drive-by shooting earlier in the day. When she did not believe him, he told her that he had accidentally fired a gun in the house. She then asked Hernandez to move out. She also told the officers that two comforters were missing from her bedrooms. After Rodriguez was shown photographs depicting the comforters in which the victims had been wrapped, she identified them as the ones missing from her home.
When Rodriguez later testified at trial, she also stated that shortly after Hernandez moved out, he asked her to bring him a white box he had left in the house. Rodriguez opened the package and found a substance that appeared to be cocaine. However, she determined that the cocaine was not real and subsequently disposed of it by flushing it down the toilet. On cross-examination, she stated that she tasted the powder and was able to determine based on prior experience that it was not real cocaine. She informed Hernandez that she destroyed the substance, but testified that he did not seem concerned.
Hernandez was taken into custody on January 25, 2003. He subsequently gave a taped statement, which was played for the jury at trial. In Hernandez’s account of the events leading up to the victims’ deaths, Hernandez was asked by Collazo, a childhood friend, whether he knew anyone who might be interested in purchasing cocaine. Hernandez suggested the name of codefendant Ricky Valle. Hernandez subsequently agreed to allow the deal to occur at his girlfriend’s townhome. Although Hernandez stated that he was “like the middleman” in the transaction, he denied having been promised any specific compensation. Hernandez admitted, however, that Collazo had indicated that he would receive some money. When asked during the interrogation whether he was aware of how much money Valle was going to pay for the cocaine, Hernandez responded: “If I’m mistaken [sic] it was thirty thousand dollars.”
On the morning of the intended transaction, Hernandez exchanged phone calls with Collazo and Valle. Hernandez assured both men that “everything [was] okay.” Hernandez stated that he was alone in the townhome when Valle arrived *756 carrying a bag, although Hernandez claimed that he never saw its contents. Valle immediately went upstairs. Hernandez told the interrogating officer that he was in the kitchen when Collazo and Ale-man arrived a few moments later. Collazo was talking on a cell phone and carrying a box approximately two to three feet in height. As Collazo and Aleman entered the house, Valle, wearing gloves and carrying a long-barreled gun, came down the stairs and shot both men in the back. Hernandez recalled hearing the sliding glass door behind him shatter. According to Hernandez, Valle then threatened his life and the life of his family if he did not help clean up the bodies. Hernandez helped Valle mop up the blood and at least one spent bullet casing and helped Valle wrap the bodies in comforters that Valle had retrieved from upstairs. Hernandez told Valle that he had to deliver a suitcase to his girlfriend, Rodriguez, who was in beauty school. Valle accompanied Hernandez to deliver the suitcase. When they returned to the house, Hernandez cleaned up the broken glass in the kitchen. Hernandez then helped Valle load the bodies into a truck, which Valle drove away.
Hernandez was also asked about the box that Rodriguez had found in the town-home. Hernandez told the interrogating officer that the box contained fake cocaine that had been given to him by Collazo long before the planned drug transaction with Valle. Collazo did not tell Hernandez why he wanted him to keep it, but Hernandez said he held on to it as a favor to Collazo. When Rodriguez found the box after Hernandez moved out, Hernandez said, he told her to flush it down the toilet because it was “no good.”
One other account of the events surrounding the murders was presented at trial. According to Cesar Morales, a jailhouse informant, Hernandez told him that he had contacted Collazo and Aleman offering to sell them cocaine. In this account, Hernandez had manufactured ten kilos of false cocaine, which he intended to sell to Collazo for $220,000 to $230,000. After Collazo and Aleman arrived at the townhome, with Valle also present, Hernandez gave a sample of the cocaine to Collazo, then went upstairs to get a gun. After Collazo discovered that the cocaine was fake, Hernandez came downstairs and shot both victims. Hernandez then threatened to kill Valle, who helped him wrap the bodies and clean the house. Finally, Hernandez and Valle loaded the bodies into a truck, which Hernandez drove away. According to Morales, Hernandez told him that he would blame Valle for the murders.[1]
After the State rested, the defense moved for a judgment of acquittal on both counts of felony murder. The defense argued in part that the evidence was insufficient to establish the underlying felony of trafficking in cocaine. Because the State had not submitted any direct evidence that the transaction involved at least 28 grams of cocaine, the defense argued, the defendant could not be found guilty of the felony of trafficking and thus could not be convicted of felony murder. The defense noted that the only testimony involving weight came from Morales, who testified that Hernandez intended to sell ten kilograms of “fake” cocaine. This, in the view of the defense, was insufficient to establish the defendant’s intent to engage in felony *757 trafficking. The court denied the motion. At the end of trial, the jury found Hernandez guilty of two counts of first-degree felony murder without personal possession of a firearm.
Subsequently, Hernandez appealed his conviction to the Third District Court of Appeal, renewing his argument that the evidence was insufficient to establish the predicate offense of trafficking or attempted trafficking in cocaine. See Hernandez, 994 So.2d at 489.[2] The court reviewed the evidence of drug quantity presented at trial. The Third District first noted that Hernandez had placed the price of the cocaine at $30,000 in his pretrial statement and that Collazo had arrived with a box two or three feet in size. With regard to the box, the court stated: “The jurors could fairly conclude that a box would not be used to transport slightly less than an ounce of cocaine.” Id. at 490.[3] Second, the district court noted that Rodriguez had described a box containing what she determined to be fake cocaine. The district court explained that regardless of whether the cocaine was real or fake, “the jury could have concluded that Hernandez thought it was the $30,000 worth of cocaine brought to him by Collazo.” Id.
Third, the district court reasoned that the jury could have concluded that a transaction for $30,000 would have involved an ounce or more of cocaine. The court explained:
Trial judges at the criminal court, prosecutors, defense lawyers — and probably even many jurors — know from other cases and news accounts that the price of an ounce of cocaine was (in 2002) and is far less than $30,000. The “price for quantity” data, though best known by criminals, is also publicized by law enforcement as one metric regarding the efforts to cut the supply chain. The State could have established street values rather easily. The State’s evidence, however, included other facts sufficient to allow the jury to conclude that the quantity was 28 grams or more.
Id. at 490 n. 4.
Finally, the Third District noted that Hernandez had told Morales that he intended to sell 10,000 grams of cocaine for a price of $220,000 to $230,000. The court determined that this evidence “also support[ed] a conclusion that Hernandez was engaged in attempted trafficking.” Id. at 490 (citing Brown v. State, 959 So.2d 146, 150 (Fla.2007)). The Third District concluded: “For his part, Hernandez has not shown a reasonable doubt that the transactions described by the witnesses were for less than 28 grams.” Id. (citing Madruga v. State, 434 So.2d 331 (Fla. 3d DCA 1983)). Accordingly, the district court affirmed Hernandez’s convictions for first-degree felony murder. Id. We granted review on September 11, 2009, based on conflict with Williams, 592 So.2d at 737, dispensing with oral argument pursuant to Florida Rule of Appellate Procedure 9.320. See Hernandez v. State, 15 So.3d 580 (Fla.2009).
ISSUES ON APPEAL
On appeal, we review Hernandez’s contention that there was insufficient evidence to affirm his convictions for felony murder where neither underlying felony *758 offense — trafficking or attempted trafficking in cocaine — was supported by evidence of a specific drug quantity. In Williams, the First District overturned the conviction of a similarly charged defendant where the only evidence of attempted trafficking was the defendant’s statement agreeing to participate in a “big deal.” See 592 So.2d at 739. The First District found that, although other testimony “indicate[d] that appellant’s co-defendant was told the buyer wished to purchase an ounce or more of cocaine, no specific amounts were discussed on the two occasions when appellant was present, nor did appellant agree to furnish a specific amount of cocaine.” Id. We find that because here, as in Williams, no evidence of a specific amount of cocaine was presented to the jury, Hernandez’s convictions for first-degree felony murder based on trafficking or attempted trafficking must be reversed.
When reviewing the sufficiency of evidence presented to a trier of fact, our task is not to retry the case or reweigh the evidence. “Rather, the concern on appeal must be whether, after all conflicts in the evidence and all reasonable inferences therefrom have been resolved in favor of the verdict on appeal, there is substantial, competent evidence to support the [decision].” Brown, 959 So.2d at 149 (alteration in original) (quoting Tibbs v. State, 397 So.2d 1120, 1123 (Fla.1981)).[4] Questions relating to the weight of the evidence and the credibility of witnesses are reserved exclusively to the trial court. See Brown, 959 So.2d at 150; see also Porter v. State, 788 So.2d 917, 923 (Fla.2001) (“We recognize and honor the trial court’s superior vantage point in assessing the credibility of witnesses and in making findings of fact.”).
Under Florida law, a person commits the first-degree felony of trafficking in cocaine when that person knowingly sells, purchases, manufactures, delivers, brings into this state, or actually or constructively possesses 28 grams or more of cocaine or any mixture containing cocaine. See § 893.135(l)(b)l.a., Fla. Stat. (2002). The State bears the burden of proving the following elements beyond a reasonable doubt: (a) the accused knowingly sold, purchased, manufactured, brought into the state, or actively or constructively possessed a certain substance; (b) the substance was cocaine; and (c) the quantity of the substance was 28 grams or more. See Snell v. State, 939 So.2d 1175,1179,1179 n. 1 (Fla. 4th DCA 2006).[5] A person commits *759 the crime of attempted trafficking when that person (a) intends to commit each element of the actual offense, and (b) commits an overt act toward the completion of the offense. See Brooks v. State, 762 So.2d 879, 897 (Fla.2000) (citing § 777.04(1), Fla. Stat. (1995)).
Initially, we note that because Hernandez was charged with attempted trafficking as well as actual trafficking, “[t]he State was not required to prove that the substance involved was actually cocaine or a mixture thereof.” Id. When a defendant has been charged with attempted trafficking, there is no need to prove that the defendant in fact bought or sold 28 grams or more of cocaine, or even that actual cocaine existed. Instead, it is sufficient that the defendant intended to be a party to a transaction involving at least 28 grams of cocaine, and committed an overt act toward the completion of that offense. See id.
In Kocol v. State, 546 So.2d 1159, 1159-60 (Fla. 5th DCA 1989), for example, the defendant was charged with trafficking in cocaine after selling to another party what the defendant claimed was a full ounce of cocaine. In fact, the amount delivered was determined by police to be only 27.58 grams of cocaine, just short of the 28 grams required to convict for actual trafficking. See id. at 1160. Regardless, it was held that the deficiency did not defeat the defendant’s conviction for conspiracy to traffic.[6] Instead, where there was evidence that the defendant had explicitly agreed to deliver an ounce of cocaine, the district court found competent, substantial evidence of his intent to sell a trafficking quantity. See id. Similarly, in Spera v. State, 656 So.2d 550, 552 (Fla. 2d DCA 1995), the Second District upheld a conviction for conspiracy to traffic, despite the defendant’s delivery of only 26.8 grams of cocaine, where the evidence established that the defendant had previously agreed with his coconspirators to deliver a full ounce.
Even the existence of actual cocaine is not necessary to convict a defendant for conspiracy or attempt to traffic. More recently, in Campbell v. State, 935 So.2d 614 (Fla. 3d DCA 2006), the Third District upheld a conviction for attempted trafficking despite the absence of any actual cocaine. There, the defendant had agreed to participate in a plot to steal cocaine from the boss of a disgruntled drug courier. In actuality, the courier was an undercover police officer and the plot was a sting operation orchestrated by the Miami-Dade Police Department. See id. at 615-16. Even though the cocaine, too, was fictional, the defendant’s attempted trafficking conviction was upheld where he *760 agreed to participate in the drug transaction and committed an overt act toward that objective. See id. at 617.
In this case, Hernandez admitted in his pretrial statement that he had agreed to 'act as a middleman in a transaction involving cocaine. According to his statement, Hernandez placed George Collazo, the seller, in touch with Ricky Valle, the purchaser. He exchanged multiple phone calls with both parties in order to facilitate the transaction on the morning the sale was to occur. He admitted Valle, Collazo and Aleman into his residence for the purpose of conducting the transaction. We find that this testimony clearly provides competent, substantial evidence that the defendant intended to commit an offense involving the sale and purchase of cocaine. See Brooks, 762 So.2d at 897. Hernandez’s statement indicates that he intended to facilitate the sale and purchase of a certain substance, and that he intended the substance to be cocaine. He also described numerous overt acts toward the completion of that objective. See id. Thus, this admission provides competent, substantial evidence that Hernandez attempted to commit the first two elements of the crime of trafficking in cocaine. See Snell, 939 So.2d at 1179, 1179 n. 1 (setting out the three elements of trafficking in cocaine for offenses occurring after the enactment of section 893.101).
As to the remaining element of the offense, the questions that must be resolved are whether sufficient evidence was presented to prove the intended weight of the drug and whether the weight proven was a trafficking amount. In upholding the petitioner’s conviction, the district court cited the following evidence in finding that Hernandez believed the transaction would involve at least 28 grams of cocaine: First, Hernandez expressed his belief that the cocaine would be sold for $30,000. Second, Hernandez stated that Collazo arrived with a box two to three feet in height. Third, Hernandez later asked his girlfriend to remove a package containing a white powder from the townhome. Fourth, a jailhouse informant testified that Hernandez intended to sell Collazo ten kilograms of false cocaine for $220,000 to $230,000. See Hernandez, 994 So.2d at 490. On review, we find that these items of evidence, alone or in combination, were insufficient to prove the defendant’s intent to buy, sell, manufacture, deliver, bring into the state, or possess at least 28 grams of cocaine.
Regarding the jailhouse informant’s testimony, we find that this statement does not provide competent, substantial evidence in support of the intended weight of the drug. While it is not necessary to prove the existence of actual cocaine in order to establish a defendant’s intent to engage in drug trafficking, see, e.g., Campbell, 935 So.2d at 617, the State must still submit evidence showing that the defendant intended to traffic in actual cocaine. In the version of the events related by the jailhouse informant, Hernandez stated only that he intended to sell ten kilograms of false cocaine to Collazo for $220,000 to $230,000. This testimony might have provided competent, substantial evidence that Hernandez intended to engage in the sale of a counterfeit controlled substance, had that offense been charged. See § 817.563, Fla. Stat. (2002) (making it “unlawful for any person to agree, consent, or in any manner offer to unlawfully sell to any person a controlled substance ... and then to sell to such person any other substance in lieu of such controlled substance”); see also Carruthers v. State, 636 So.2d 853 (Fla. 1st DCA 1994) (discussing the offense of attempted sale of a counterfeit controlled substance). Where an accused’s only assertion, howev *761 er, is that he or she intended to sell a substance that was not the controlled substance whose possession, sale, or purchase is prohibited by statute, that statement alone provides no evidence of the suspect’s intent to engage in the trafficking of the actual substance.[7]
Similarly, we reject the district court’s conclusion that attempted trafficking was supported by Vicky Rodriguez’s account of finding a box of false cocaine in her home. Again, Rodriguez testified only that the substance was false cocaine, and she did not give any statement regarding its quantity. Like Rodriguez, Hernandez stated only that the substance was false cocaine. In the absence of any evidence that the contents of the box included 28 grams or more of cocaine or that the substance inside was actual cocaine, rather than counterfeit cocaine, we find this evidence insufficient to support the charge that Hernandez was guilty of trafficking or attempting to traffic in at least 28 grams of cocaine.
As to Hernandez’s specific statement that the box carried by Collazo was two or three feet in height, this evidence likewise fails to support the element of quantity where there was no evidence indicating that the box in fact contained cocaine. While it is possible to infer, as the district court concluded, that Hernandez believed the box contained the $30,000 worth of cocaine Collazo was expected to bring to the transaction, see Hernandez, 994 So.2d at 490, Hernandez did not make any statement indicating that he believed this to be true. Further, there was no discussion of the quantity of cocaine that might have been contained in the box. In the absence of such testimony, the box alone provides no evidence of Hernandez’s intent to buy or sell a specific quantity of cocaine of at least 28 grams.
The remaining item of evidence was Hernandez’s statement that he believed the cocaine would be sold for the price of $30,000. We find this evidence comparable to that reviewed in our decision in Brooks, 762 So.2d at 879. In that case, the only evidence supporting the defendant’s intent to engage in a transaction involving at least 28 grams of cocaine was his statement agreeing to purchase thirty “jugglers” of crack cocaine. See id. at 898. Alone, this evidence would not have been sufficient to support the conviction, since it is doubtful, to say the least, that the specific meaning of the term “juggler,” as it is used in a drug transaction, was within the common knowledge of the jury pool. However, we found sufficient evidence of the defendant’s intent where another witness, an experienced drug dealer, testified that “juggler” was a common term for a one-gram rock of crack cocaine. See id. Based on this testimony, we found that “this evidence was sufficient to establish that Brooks intended to obtain a specific amount of crack cocaine — 28 or more grams — that was above the requisite amount to prove trafficking.” Id.
Just as “juggler” was used as a proxy for drug quantity in Brooks, we are asked in this case to apply the dollar value of the cocaine as a proxy for quantity in the transaction between Collazo, Aleman, and Valle. Price may clearly be used as evidence of drug quantity (or intended drug quantity) under certain circumstances. As the New York Court of Appeals has noted: “Where there is evidence of the price paid for a quantity of drugs, then there is evidence [a] defendant knew its weight, since value is based on weight.” People v. San *762 chez, 86 N.Y.2d 27, 629 N.Y.S.2d 179, 652 N.E.2d 925, 929 (1995). Similarly, under federal law, courts are permitted to take the general price of a drug into account when estimating the quantity of drugs involved in an illicit enterprise or conspiracy. The application notes to the Federal Sentencing Guidelines provide:
Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.
U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n. 12 (2010) (emphasis added).
In United States v. Paulino, 996 F.2d 1541, 1546 (3d Cir.1993), for example, the defendants were charged with conspiring to distribute over five kilograms of cocaine over a period of thirty months. Examining the evidence relied on by the trial court in calculating the defendants’ sentences under the Sentencing Guidelines, the federal appellate court explained that “[t]he most specific evidence of volume” presented by the government was a statement by one of the defendants’ employees that the defendants’ drug business had grossed $12,000 in a single night. Id. Following the presentation of this evidence, the government called an agent of the Drug Enforcement Agency to testify that cocaine sold at a price of $1,000 per ounce during the period of the conspiracy. Id. The appellate court determined that this testimony constituted “quantifiable trial evidence” on which the sentencing judge was permitted to estimate the amount of cocaine involved in the conspiracy. Id. at 1548.
In the present case, however, there was no evidence on which the jury could have reasonably connected the price of $30,000 to a specific quantity of at least 28 grams. As the district court noted, the State could have submitted evidence that $30,000 was greater than the value of one ounce of cocaine. See Hernandez, 994 So.2d at 490 n. 4. However, no such evidence was presented at trial. And although it may be true that “[tjrial judges at the criminal court, prosecutors, defense lawyers — and probably even many jurors — know ... that the price of an ounce of cocaine was (in 2002) and is far less than $30,000,” id., we do not believe the price of cocaine is sufficiently known to the public at large that a jury can be left to infer on its own that a dollar value alone proves that a trafficking quantity of cocaine was involved in a particular transaction.
As in Williams, where the First District found the defendant’s statement agreeing to participate in a “big deal” insufficient to establish his intent to purchase a trafficking quantity of cocaine, see 592 So.2d at 739, there was no evidence in this case from which the jury could reasonably infer that Hernandez intended to participate in a transaction involving at least 28 grams of cocaine. Accordingly, we find that the State failed to establish each element of trafficking or attempted trafficking, and conclude that Hernandez’s convictions for felony murder in the first-degree must be reversed.
REMEDY
Having concluded that Hernandez’s convictions must be vacated, we consider the remedy to be applied. Under section 924.34, Florida Statutes (2010):
When the appellate court determines that the evidence does not prove the *763 offense for which the defendant was found guilty but does establish guilt of a lesser statutory degree of the offense or a lesser offense necessarily included in the offense charged, the appellate court shall reverse the judgment and direct the trial court to enter judgment for the lesser degree of the offense or for the lesser included offense.
In I.T. v. State, 694 So.2d 720, 724 (Fla.1997), we interpreted section 924.34 to allow an appellate court to modify the trial court’s verdict and to enter a judgment either for a necessarily lesser included offense or for a permissive lesser included offense where supported by the allegations in the charging document and the proof at trial.[8] See also State v. Sigler, 967 So.2d 835, 842 (Fla.2007) (explaining that in order for an appellate court to direct a verdict for a lesser included offense, the jury must have found every element of that lesser offense beyond a reasonable doubt).
In this case, the allegations in the charging document and the proof at trial support the entry of a judgment for third-degree felony murder as a permissive lesser included offense of first-degree felony murder.[9] Hernandez was charged with first-degree felony murder pursuant to section 782.04(1), Florida Statutes (2002), with the underlying felony of trafficking or attempted trafficking in 28 or more grams of cocaine as prohibited by section 893.135(1). Section 782.04(1) defines first-degree murder as any unlawful killing committed by a person engaged in any felony listed in that section, including any trafficking offense under section 893.135(1). See § 782.04(l)(a)2.a., Fla. Stat. (2002). Under section 782.04(4), however, an unlawful killing committed by a person engaged in any felony not listed in section 782.04(1) is felony murder in the third degree. See § 782.04(4), Fla. Stat. (2002).
Even without evidence that Hernandez intended to engage in a transaction involving at least 28 grams of cocaine, then, the jury verdict supports a finding that Hernandez committed a qualifying felony under section 782.04(4). Under section 893.13(l)(a)l., Florida Statutes (2002), possession with the intent to sell, manufacture, or deliver a schedule II controlled substance, regardless of weight, is a felony of the second degree. See § 893.03(2)(a)4., Fla. Stat. (2002) (classifying cocaine as a Schedule II controlled substance). Further, an attempt to commit a second-degree felony is classified as a felony in the third degree. See § 777.04(4)(d)l., Fla. Stat. (2002). In the present case, sufficient evidence was presented to prove that Hernandez attempted to engage in a transaction involving an unspecified quantity of cocaine. See Ross v. State, 528 So.2d 1237, *764 1241 (Fla. 3d DCA 1988) (reducing a conviction for trafficking in cocaine to mere possession where the evidence was insufficient to establish the defendant’s possession of at least 28 grams of cocaine). Accordingly, because Hernandez was charged and convicted in a manner encompassing each element of third-degree felony murder, this Court may direct a verdict for the lesser included offense pursuant to section 924.34. See Sigler, 967 So.2d at 842.
CONCLUSION
For the reasons expressed above, we quash the decision below affirming Hernandez’s convictions for first-degree felony murder and remand to the district court with instructions to vacate the convictions and direct the entry of judgments for third-degree felony murder.
It is so ordered.
PARIENTE, LEWIS, LABARGA, and PERRY, JJ., concur.
CANADY, C.J., dissents with an opinion, in which POLSTON, J., concurs.

. Morales reported several conflicting statements that Hernandez had also allegedly made about the crime. Initially, when Hernandez learned that Valle was accusing him, Hernandez indicated that it was Valle who had committed the murders. In another account, Hernandez told Morales that he had been paid $300,000 by a group called Casa Romero for a contract killing on Collazo and Aleman.

. Hernandez also argued that the jailhouse statements to Morales should have been suppressed by the trial court. See Hernandez, 994 So.2d at 489-90. However, this claim was rejected by the Third District and Hernandez has not renewed the argument here.

. The trafficking statute requires slightly less than one ounce of cocaine (28 grams) to support a conviction. See § 893.135(l)(b). When converted into metric units, one ounce equals 28.35 grams. See Merriam-Webster’s Collegiate Dictionary 1341 (10th ed. 1999).

. In finding that Hernandez failed to show a "reasonable doubt” that the transaction was for less than 28 grams, Hernandez, 994 So.2d at 490, the district court did not apply the correct standard of review. The issue is not whether Hernandez can demonstrate a reasonable doubt as to his guilt, but whether competent, substantial evidence was presented at trial in support of the jury's verdict.

. Previously, the State was also required to prove that an accused had knowledge of the illicit nature of the substance — i.e., knowledge that the substance was in fact cocaine — as an additional element of the offense of trafficking in cocaine. See State v. Dominguez, 509 So.2d 917 (Fla.1987). In 2002, the Legislature enacted section 893.101, Florida Statutes, eliminating knowledge of a controlled substance’s illicit nature as an element of any offense under chapter 893. Instead, the lack of such knowledge may be raised as an affirmative defense. See § 893.101(2), Fla. Stat. (2010).
We observe that although several provisions of the Florida Standard Jury Instructions were amended to conform to section 893.101, the instruction on the offense of trafficking in cocaine was left unchanged. See In re Standard Jury Instructions in Criminal Cases (No.2005-3), 969 So.2d 245, 262-63 (Fla.2007). Indeed, in this case the jury was instructed that trafficking in cocaine was a four-element offense, even though Hernandez committed his crime after May 13, 2002, the date the new statute became effective. See *759 ch.2002-258, § 2 Laws of Fla. There appears to be some confusion among the district courts as to whether knowledge of the illicit nature of the substance remains an element of trafficking in cocaine. Compare Leigh v. State, 967 So.2d 1102, 1105 (Fla. 4th DCA 2007) (listing “the defendant knew the substance was cocaine” as an element of trafficking, when the appellant’s offense occurred after the enactment of section 893.101), with Barrientos v. State, 1 So.3d 1209, 1216-17 (Fla. 2d DCA 2009) (upholding the trial court’s decision to remove knowledge of the illicit nature of the substance from an instruction on trafficking in cocaine, and noting that, "for offenses occurring after section 893.101 became effective, the standard jury instruction is inaccurate”). We direct the Supreme Court Committee on Standard Jury Instructions in Criminal Cases to consider whether the instruction on this offense must be altered in light of section 893.101.

. As we noted in Brooks, ”[t]he fact that Kocol involved conspiracy, rather than attempt, does not render that case inapplicable here.” Brooks, 762 So.2d at 897 n. 23. Brooks, Ko-col, and the present case all concern the same issue, namely, a defendant’s intent to traffic in cocaine.

. Additionally, although in the informant's account Hernandez himself was the one who shot the victims, the jury necessarily rejected this testimony by finding Hernandez guilty of first-degree felony murder without personal possession of a firearm.

. The distinction between necessarily and permissive lesser included offenses was explained by this Court in Sanders v. State, 944 So.2d 203 (Fla.2006):
Necessarily lesser included offenses are those offenses in which the statutory elements of the lesser included offense are always subsumed within those of the charged offense. State v. Paul, 934 So.2d 1167, 1176 (Fla.2006). A permissive lesser included offense exists when "the two offenses appear to be separate [on the face of the statutes], but the facts alleged in the accusatory pleadings are such that the lesser [included] offense cannot help but be perpetrated once the greater offense has been." State v. Weller, 590 So.2d 923, 925 n. 2 (Fla.1991).
Id. at 206 (alterations in original).

. The jury was in fact instructed on third-degree felony murder as a lesser included offense. The trial court's instruction stated that the jury should find Hernandez guilty of third-degree felony murder if it determined that he was engaged in the commission of or attempt to commit the offense of possession with the intent to sell, manufacture, or deliver less than 28 grams of cocaine.