# Third District Court of Appeal

## State of Florida

Opinion filed July 16, 2025.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D23-1818
Lower Tribunal No. F20-17380C

————————————

**Melphys Santana-Ozuna**,
Appellant,

vs.

**The State of Florida**,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, William Altfield, Judge.

Carlos J. Martinez, Public Defender, and Deborah Prager, Assistant Public Defender, for appellant.

James Uthmeier, Attorney General, and Kayla H. McNab, Assistant Attorney General, for appellee.

Before LOGUE, LINDSEY, and BOKOR, JJ.

LINDSEY, J.

Appellant Melphys Santana-Ozuna raises two issues in this timely appeal of his convictions for Trafficking in Cocaine and Conspiracy to Traffic in Cocaine. Santana-Ozuna was tried together with a codefendant, Aldrin Gomez-Martinez.[1] Both men were convicted at trial and separately appealed their convictions. On appeal, Gomez-Martinez raised one of the issues Santana-Ozuna raises here, "challeng[ing] the admission into evidence of recorded calls between [Santana-Ozuna and] a confidential informant" over an authentication objection. Gomez-Martinez v. State, 50 Fla. L. Weekly D1285, D1285 (Fla. 3d DCA June 11, 2025). This Court affirmed, holding that the admission of these recordings at the joint trial was not error. Id. at D1288. Because this Court has already decided this issue, we are constrained by Gomez-Martinez to affirm.[2]

Santana-Ozuna raises a second issue, claiming that the evidence presented at his trial was insufficient to support a conviction for Trafficking in Cocaine because he only agreed to purchase specific "Louis Vuitton" branded cocaine that did not actually exist, not the unbranded cocaine an

---

[1] A third codefendant, Christian Jaquez, entered into a plea agreement.

[2] "Unless the Florida Supreme Court overrules a prior panel's decision, a subsequent panel of this Court is not free to disregard, and must follow, precedent of the prior panel. Only the Court, sitting *en banc*, may recede from a prior panel's decision." Nat'l Med. Imaging, LLC v. Lyon Fin. Servs., Inc., 347 So. 3d 63, 64 n.2 (Fla. 3d DCA 2020) (citations omitted).

undercover officer presented to him for inspection.  We find no merit in this argument.

"Generally, an appellate court will not reverse a conviction that is supported by competent, substantial evidence."  Johnston v. State, 863 So. 2d 271, 283 (Fla. 2003).  "There is sufficient evidence to sustain a conviction if, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt."  Id. (citing Banks v. State, 732 So. 2d 1065 (Fla. 1999)).  To prove the offense of Trafficking in Cocaine, "[t]he State bears the burden of proving the following elements beyond a reasonable doubt: (a) the accused knowingly sold, purchased, manufactured, brought into the state, *or actively or constructively possessed* a certain substance; (b) the substance was cocaine . . . ."  Hernandez v. State, 56 So. 3d 752, 758 (Fla. 2010) (emphasis added) (citing Snell v. State, 939 So. 2d 1175, 1179 n.1 (Fla. 4th DCA 2006)).  "'Possession' includes temporary possession for the purpose of verification or testing, irrespective of dominion or control."  § 893.02(21), Fla. Stat. (2024); see also Amaya v. State, 782 So. 2d 984, 985 (Fla. 3d DCA 2001).

Here, the State presented competent, substantial evidence at trial that Santana-Ozuna picked up the cocaine on the table for the purpose of verifying or testing it.  Consequently, we affirm.

Affirmed.

LOGUE, J., concurs.

BOKOR, J., specially concurring.

Melphys Santana-Ozuna and co-defendant Aldrin Gomez-Martinez were charged with trafficking cocaine, conspiracy, and money laundering. The co-defendants were tried together. The State relied on a tape recording of calls between a confidential informant and Santana-Ozuna to prove the existence of a conspiracy to traffic cocaine and the defendants' part in such conspiracy. Because the issues on appeal are identical, we are bound by this court's opinion in Gomez-Martinez v. State, 50 Fla. L. Weekly D1285 (Fla. 3d DCA June 11, 2025).[3] I therefore agree we must affirm. But I write to express my agreement with Judge Gooden's dissent in Gomez-Martinez.

I respectfully suggest that the Gomez-Martinez majority's use of circumstantial evidence, including the post-hoc actions of the parties, comes close to providing sufficient indicia of reliability to place the recording before

---

[3] "Unless the Florida Supreme Court overrules a prior panel's decision, a subsequent panel of this Court is not free to disregard, and must follow, precedent of the prior panel. Only the Court, sitting *en banc*, may recede from a prior panel's decision." Nat'l Med. Imaging, LLC v. Lyon Fin. Servs., Inc., 347 So. 3d 63, 64 n.2 (Fla. 3d DCA 2020) (citations omitted).

the jury. Close but no cigar. We lack evidence establishing the recording device's reliability, the competence of the operator, or the accuracy or authenticity of the recording. The confidential informant didn't testify. The detective who received the electronic copies of the recording did. The detective testified that the informant electronically uploaded and conveyed a copy of the recording to the detective after the conversations took place. The detective, because he didn't listen in to the conversation live, could only testify that the recording played to the jury was consistent with what he received from the informant. But he couldn't testify to the accuracy of the recording or whether the recording remained unaltered throughout the process from tape recorder to download on the informant's computer to transmission to the detective.

This fails to meet President Reagan's maxim to "trust but verify."[4] Or, it is heavy on the trusting and light on the verification. More importantly, it doesn't meet the evidentiary threshold required for authentication. See Parnell v. State, 218 So. 2d 535, 541 (Fla. 3d DCA 1969) (setting forth four-part showing to authenticate a voice recording); United States v. Capers, 708

---

[4] Originally a Russian proverb, the expression made its way to English, and political fame, through President Reagan's use of the phrase at a White House signing ceremony for the U.S.-Soviet Intermediate-Range Nuclear Forces Treaty on December 8, 1987. See William D. Watson, Trust, but Verify: Reagan, Gorbachev, and the INF Treaty, 5 Hilltop Rev. 22, 38 (2011).

6

F.3d 1286, 1308 (11th Cir. 2013) ("Because there was no testimony about the fidelity of the audio equipment, and no independent evidence of the accuracy of the audio recordings, the District Court should not have admitted the audio portion of the tape." (internal citations omitted)); United States v. Sarro, 742 F.2d 1286, 1292 (11th Cir. 1984) ("In order to authenticate a taped recording, the government, in a criminal case, must show: (1) the competency of the operator; (2) the fidelity of the recording equipment; (3) the absence of material deletions, additions, or alterations in the relevant part of the tape; and (4) the identification of the relevant speakers."). For that, and the reasons more thoroughly explored in Judge Gooden's dissent in Gomez-Martinez, the proffered testimony fails to rise to the level of the type of circumstantial evidence that can reasonably authenticate the recording.